Martha LAWRENCE, et al., Appellants,

v.

**COASTAL MARINE SERVICE OF TEXAS, INC., Appellee.**

No. 09–96–110CV.

Court of Appeals of Texas, Beaumont.

Submitted Oct. 2, 1997.

Decided Dec. 31, 1997.

Ordered Published Feb. 9, 1999.

Tommy L. Yeates, Moore, Landrey, Garth, Jones, Burmeister & Hulett, Beaumont, Richard G. Lewis, Boneau & Lewis, Port Arthur, Ed W. Barton, Orange, for appellant.

Thomas W. Duesler, Harris, Lively & Duesler, Beaumont, Robert J. Killeen, Jr., McAlpine, Peuler, Cozad & Davie, Houston, Thomas C. Fitzhuge, III, Fitzhugh & Thompson, Houston, for appellee.

Before BURGESS, STOVER and CARR,* JJ.

## OPINION

RON CARR, Justice (Assigned).

This is an appeal of a take-nothing judgment in a negligence and premises liability case brought by appellants after the death of John Ray Lawrence as the result of an accident on a crane owned by appellee, Coastal Marine Service of Texas, Inc. [Coastal], which occurred while Lawrence was working for Coastal's independent contractor, H.W. Campbell Construction Company [Campbell] on Coastal's premises.

The case proceeded to trial against Campbell and Coastal after the trial court directed a partial verdict against appellants on the premises liability issue. The jury returned an adverse verdict on the negligence issue and a take-nothing judgment was entered.

Appellants now bring this appeal[1] with five (5) points of error contending that the trial court erred (1) in granting Coastal's partial directed verdict [points of error one through three]; and, (2) by committing charge error [points four and five].

### The Accident

The record reflects that at the time of the accident Coastal's crane was being used by Campbell's employees to offload skids on Coastal's property. After the skids were removed, the boon was moved to the rear of the crane by the operator, at which time Lawrence's head was crushed resulting in his death. There was no barricading system to prevent access by Lawrence to the rear "pinch point" area. This rear pinch point area was not readily apparent to the operator in that the crane had no mirrors and the operator had to step out of his cab to see this blind spot, nor did the crane have an operator's manual in the cab.

### Premises Liability

Appellants' first three (3) points of error contend collectively that the trial court erred in granting Coastal's partial directed verdict on the premises liability issue because there is some evidence that Coastal in fact retained control over the crane in that the record affirmatively reflects that Campbell employees would have followed Coastal's direction and instructions regarding the crane if given by Coastal. We agree.

### Directed Verdict Review

A party is entitled to a directed verdict only when there is no evidence to support a material issue. *Corbin v. Safeway Stores, Inc.,* 648 S.W.2d 292, 295 (Tex.1983). The trial court should direct a verdict only when reasonable minds can draw only one conclusion from the evidence. *Vance v. My Apartment Steak House,* 677 S.W.2d 480, 483 (Tex.1984). In reviewing a directed verdict, we must consider all evidence in the light most favorable to the party against whom the verdict was directed, disregarding all contrary evidence and inferences. *Porterfield v. Brinegar,* 719 S.W.2d 558, 559 (Tex.1986). The appellate court must determine if there is any probative evidence to raise a fact issue. *Id.* A directed verdict will be held improper if there is any evidence in the record of probative force on any theory of recovery. *Jones v.Tarrant Utility Co.,* 638 S.W.2d 862, 865 (Tex.1982).

### Duty

Generally, a premises owner has a duty to use reasonable care to keep the premises under his control in a safe condition. *Redinger v. Living, Inc.,* 689 S.W.2d

---

* The Honorable Ron Carr, sitting by assignment pursuant to TEX. GOV'T CODE ANN. § 74.003(b) (Vernon 1988).

1. After perfecting appeal, Campbell was dismissed from this appeal.

415, 417 (Tex.1985). However, if a premises owner retains/hires an independent contractor to perform a specific task on the premises, the independent contractor will then owe a duty to use reasonable care to keep the premises under his control in a safe condition. *Id.* It is undisputed that at all times material, Lawrence and his employer Campbell were independent contractors of Coastal.

■ The general rule is that an owner or occupier does not have a duty to see that an independent contractor performs work in a safe manner. *Id.* Coastal can presume that an independent contractor, such as Campbell, will take proper care and precautions to assure the safety of its own employees. *Agricultural Warehouse, Inc. v. Uvalle,* 759 S.W.2d 691, 695 (Tex.App.—Dallas 1988), *writ denied per curiam,* 779 S.W.2d 68 (Tex. 1989).

■ An exception to this rule exists when an employer or general contractor retains control over the work performed by an independent contractor. Therefore, a premises owner, such as Coastal, may be liable when it retains the right to control some part of the independent contractor's work, but fails to exercise the retained control with reasonable care. *Redinger,* 689 S.W.2d at 418. Control, or the right to control, when resting with the landowner, then, is paramount to recovery. *Exxon Corp. v. Quinn,* 726 S.W.2d 17, 20 (Tex.1987). In this instance, the right of control must be more than a general right to order the work to start or stop, to inspect progress or receive reports. *Redinger,* 689 S.W.2d at 418. The right of control must extend to the specific area of operation where the plaintiff's injury allegedly took place. A general right to control the entire operation is not enough. *Exxon Corp. v. Tidwell,* 867 S.W.2d 19, 23 (Tex. 1993).

In this case, it is undisputed that at the time of the accident, Lawrence was an employee of Campbell; Campbell was an independent contractor of Coastal; and, that Coastal was the owner of the unsafe crane, which is the premises in question.

## The Evidence

■ Robert Phillips was Campbell's supervisor at the site and at the time of Lawrence's death. He testified he would have complied with any instructions from Coastal regarding movement of the crane. Campbell historically provided labor services for Coastal on Coastal's property. Phillips relied on Coastal to provide a good crane. He would have put a barricade tape around the danger area if Coastal had wanted him to, and, he would have done whatever he had been ordered to do by anybody at Coastal and he knew he was to do so at the time period that the death occurred.

Mr. Melvin was an employee and the human resources manager of Campbell at the time of Lawrence's death. Solari acknowledged there was absolutely no question in his mind that if Mr. Lyday, the President of Coastal, had asked him to have Phillips move the crane, that he would have complied; or if Mr. Lyday had asked him to not use the crane until it had been inspected or brought up to industry standards with all the manuals on board, etc., that he would have complied as well; that the safe operation of cranes and instructions related thereto are important to the workmen and despite this he had not even seen the operator's manual until after Lawrence's death; that Mr. Lyday came to the yard in September of 1994 and that he came there after the fatality; and, that had Mr. Lyday come out before the fatality and requested that the crane be moved, that it would have been moved.

Campbell's expert, Jimmy Wiethorn, was a professional engineer with experience in operating cranes. He testified that the crane was ragged, old, had seen quite an extensive life, and was pretty well beat up. He testified that the outrigger controls to the crane had been disengaged or removed from inside the cabin, the acceleration pedal had been disconnected, the brake installed below the console did not operate, the gas throttle did not operate, there was no operator's manual present, and, that the operator's manual that should have been in the crane contained specific instructions to avoid moving the crane until all personnel are clear.

Wiethorn further testified that there was no load chart to comply with the American National Standards Institute (ANSI) within the crane. The operator's manual was required by OSHA and ANSI to be kept in the cab at all times. According to Wiethorn, OSHA and ANSI standards applied to this particular crane and Coastal could have easily provided the people who worked with the crane with the pertinent OSHA standards regarding its operation. He testified that proper operation of a crane calls for the operator to be thoroughly conversant with the crane's operating manual, which the crane operator could not have done in this case because it was not present in the cab. Wiethorn also opined that the crane was not properly maintained in that it had numerous problems, including a throttle that did not operate properly, it ran at a constant speed that could not be adjusted, the boom angle indicator was defective, a brake did not operate, outrigger controls had been taken out, and various other problems. Wiethorn admitted that Coastal, the owner, had the responsibility to have some type of inspection procedure set up to make sure a safe and suitable crane was provided to those who would use it on the premises. OSHA requires barricades in this particular setting. He opined that barricades are customary with both old and new cranes and it does not take much to make a barricade system even for old cranes. He admitted that the cost of barricade tape is nominal and basically less than a penny a foot. He testified that this is something Coastal could have kept on a permanent basis is the cab for the purpose of warning someone. Had Wiethorn inspected the crane, he would have recommended that a portable barricade travel with the crane.

## Conclusion

██ Viewing the above evidence in the light most favorable to appellants, we conclude the above evidence is some evidence of probative force that raises a fact issue regarding Coastal's right to control the crane, its operations, movements, and conditions under which it could operate while it was in Campbell's possession. The retention of the right to direct or to forbid the manner in which something is done suffices. *Redinger* 689 S.W.2d at 418. The employees relied on Coastal to provide a good crane. Coastal had a responsibility to ensure a safe and suitable crane and had the basic duty to make the premises safe for its invitees. *Smith v. Henger,* 148 Tex. 456, 226 S.W.2d 425, 431 (1950). This includes the duty to warn of dangerous conditions and hidden defects. *Id.* In *Abalos v. Oil Development Co. of Texas,* 544 S.W.2d 627 (Tex.1976): the Supreme Court differentiated those cases in which the defendant did not create the dangerous condition. In *Abalos,*[2] the Supreme Court stated that although an owner does not have a duty to see that an independent contractor performs work in a safe manner, the rule is inapplicable "if a party negligently creates a dangerous situation, it then becomes his duty to do something about it ..." *Id.* at 633. Since the employees would have acquiesced to Coastal's right to direct the operations of the crane, it is fair to infer that their course of business dealings gave Coastal premises control. The fact that Coastal did not exercise the control does not release it from liability. *O'Neill v. Startex,* 715 S.W.2d 802, 805 (Tex.App.—Austin 1986, no writ).

Appellants' points of error one through three are sustained. Judgment is reversed and remanded as to appellants' premises liability claim.

## Alleged Charge Error

██ The trial court submitted the following instruction preceding Question No. 1:

In determining the negligence or gross negligence, if any, of Coastal Marine Services of Texas, Inc., you are instructed that such negligence or gross negligence must relate to the crane in question as the premises owner, Coastal Marine Service of Texas, Inc. was not subject to any OSHA regulations as they pertain to the premises or safe operation of the project. Further, as the premises owner, Coastal Marine Service of Texas, Inc. had no duty to see that the H.W. Campbell Construction

**2.** *Redinger* relies on *Abalos* to support its holding    at 418.

Company or its employees performed the work in a safe fashion.

Appellants' points of error four and five collectively contend that the trial court erred in submitting the above instruction because it improperly commented on the weight of the evidence [point four] and advised the jury of the effect of its prior ruling on Coastal's motion for partial directed verdict [point five]. We disagree.

Campbell's expert testified that certain OSHA standards apply to the crane itself.

We first conclude the instruction, as submitted, was not an improper comment on the weight of the evidence. The instruction did not advise the jury that OSHA regulations do not apply to Coastal with regard to the crane and its operation. The instruction is clear, in specifically instructing the jury that any negligence on the part of Coastal must relate to the crane in question. The second sentence of the instruction simply stated that Coastal was not subject to any OSHA regulations "as they pertain to the premises or safe operation of the project." There is nothing in the Court's instructions to suggest that OSHA regulations were inapplicable to Coastal, to the extent the regulations applied to the crane itself.

■ Appellants next contend that because Coastal was a premises owner, the instruction somehow advised the jury of the effect of the trial court's prior ruling granting Coastal's motion for partial directed verdict, as stated above. We disagree with appellants' argument that the instruction effectively instructs the jury that Coastal is not subject to any OSHA standards and that the jury should not consider OSHA standards and the experts' testimony based thereon.

■ A trial court must submit explanatory instructions and definitions that will assist the jury in rendering a verdict. *Wichita County, Texas v. Hart*, 917 S.W.2d 779, 783–84 (Tex.1996). This is exactly what was done in the case at bar. Additionally, the trial court has wide discretion to determine the sufficiency of definitions and instructions. *Plainsman Trading Co. v. Crews*, 898 S.W.2d 786, 791 (Tex.1995). Although an instruction

might incidentally comment on the evidence, the Court's charge is not objectionable on the ground that it incidentally constitutes a comment on the weight of the evidence when it is properly a part of an instruction or definition. TEX.R. CIV. P. 277. To be a direct comment on the weight of the evidence, the jury instruction must suggest to the jury the trial judge's opinion. *Texas Employers Ins. Ass'n v. Duree*, 798 S.W.2d 406, 412 (Tex. App.—Fort Worth 1990, writ denied). The instruction preceding Question No. 1 given the jury by the trial court gave no indication to the jury of any opinion of the trial court regarding the facts of the case and therefore, it was proper.

■ Furthermore, appellants have not shown that the submission of this instruction caused the jury to render an improper verdict. TEX.R.APP. P. 81(b)(1). This is especially true in light of the fact that the appellants vigorously argued the applicability of OSHA standards to the crane itself during closing arguments.

Appellants' fourth and fifth points of error are denied. Judgment is affirmed as to appellants' negligence claim.

JUDGMENT IS REVERSED AND REMANDED IN PART AND AFFIRMED IN PART.