Affirmed and Opinion filed March 13, 2007








Affirmed and Opinion filed March 13, 2007.

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00301-CV

____________

 

LUIS ARTURO GUEVARA BELTETON,
TEMPORARY ADMINISTRATOR OF THE ESTATE OF FLAVIO GONZALES-SOTO, DECEASED, TELMA
GUEVARA BELTETON, INDIVIDUALLY AND AS NEXT FRIEND OF ROEL ESTUARDO GONZALEZ
GUEVARA, NCM, SANDRA ELIZABETH GONZALEZ GUEVARA, A MINOR CHILD, AND MARLENE
LORENA GONZALEZ GUEVARA, A MINOR CHILD, FREDY OTONIEL GONZALEZ GUEVARA,
INDIVIDUALLY, HERBERT GONZALEZ GUEVARA, INDIVIDUALLY, FLAVIO ABRAHAM GONZALEZ
GUEVARA, INDIVIDUALLY, AND BERNABE GONZALEZ CORDOVA, INDIVIDUALLY, Appellants

 

V.

 

DESCO STEEL ERECTORS AND CONCRETE,
INC., JOSE DE SANTIAGO D/B/A DESCO STEEL ERECTORS ET AL., AND ADRIAN INDUSTRIAL
CONSTRUCTORS, INC., Appellees

 



On Appeal from the 61st
District Court

Harris County, Texas

Trial Court Cause No. 02-25216



 

O P I N I O N








Appellants,  Luis Arturo Guevera Belteton, temporary
administrator of the estate of Flavio Gonzales-Soto (ASoto@), deceased, et
al. (collectively referred to as AAppellants@), appeal from the
trial court=s granting of a summary judgment in favor of the appellee,
Adrian Industrial Constructors, Inc. (AAdrian@).  Appellants
brought suit after Soto fell to his death while working on a construction
site.  Appellants bring one issue complaining that the trial court erred when
it granted Adrian=s motion for summary judgment.  We affirm.

I.  Background

Adrian was hired by Marine Max to strip the existing shell
of a metal building and replace it with new metal Askin.@  Adrian=s president, Billy
Ray Combs, entered into discussions with Jose de Santiago, the president of
Desco Steel Erectors & Concrete, Inc. (ADesco@), to work on the
project.  At some point during the discussions, Adrian sent Desco a subcontract
agreement (ASubcontract Agreement@) to sign.  Adrian
also requested, both orally and in the contract itself, that Desco maintain
liability insurance.  Desco began working on the project despite never signing
the agreement or sending proof of insurance in its own name. 

Desco hired Soto and two other employees to work on the
project.[1] 
On the third day of work, Soto fell through a skyglass window and was killed. 
Appellants brought an action for negligence and gross negligence against
several defendants, including Adrian.

Adrian filed a no-evidence motion for summary judgment,
which was granted on May 25, 2004.  Appellants= motion to
reconsider and vacate the no-evidence summary judgment was granted on November
19, 2004.  Adrian then filed a traditional motion for summary judgment, which
was granted on January 11, 2006.  Appellants= motion to
reconsider and vacate the second motion for summary judgment was denied.  All
other parties have settled with Appellants pursuant to final judgments. 
Appellants bring this appeal solely as to Adrian.    








 

II.  Analysis

In their sole point of error, Appellants argue that the
trial court erred when it granted Adrian=s second motion
for summary judgment.  In a traditional motion for summary judgment, the movant
bears the burden of establishing that there is no genuine issue of material
fact and that it is entitled to judgment as a matter of law.  Tex. R. Civ. P. 166a(c); KPMG Peat
Marwick v. Harrison County Hous. Fin. Corp., 988 S.W.2d 746, 748 (Tex.
1999).  A defendant is entitled to summary judgment only if he (1) conclusively
negates at least one element of each of the plaintiff=s causes of
action, or (2) conclusively establishes each element of an affirmative defense
to each claim.  KPMG Peat Marwick, 988 S.W.2d at 748; Science
Spectrum, Inc. v. Martinez, 941 S.W.2d 910, 911 (Tex. 1997).  In deciding
whether a disputed material fact issue precludes summary judgment, summary
judgment evidence favorable to the nonmovant will be taken as true, every
reasonable inference must be indulged in favor of the nonmovant, and any doubts
are resolved in the nonmovant=s favor.  KPMG Peat Marwick, 988
S.W.2d at 748; Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 549 (Tex.
1985).  We review de novo the trial court=s decision to
grant summary judgment.  Natividad v. Alexsis, Inc., 875 S.W.2d 695, 699
(Tex. 1994).

Appellants sued Adrian based on theories of negligence and
gross negligence.  Common law negligence consists of three elements: (1) a
legal duty owed by one person to another; (2) a breach of that duty; and (3)
damages proximately resulting from the breach.  Praesel v. Johnson, 967
S.W.2d 391, 394 (Tex. 1998); Greater Houston Transp. Co. v. Phillips,
801 S.W.2d 523, 525 (Tex. 1990).  Adrian moved for summary judgment on the
ground that it owed no duty to Soto.  Appellants allege that Adrian owed Soto a
duty (1) through Adrian=s agency relationship with Desco, (2)
because Adrian had a sufficient degree of control over Desco, (3) as a premises
owner of the property on which Soto died, and (4) in employing Desco.








 

 

A.      Agency
Relationship

Appellants first argue that Adrian is vicariously
responsible for the actions of Desco because Desco was Adrian=s agent, as
opposed to its independent contractor.  An independent contractor has been
defined as any person who, Ain the pursuit of an independent business,
undertakes to do a specific piece of work for other persons, using his own
means and methods, without submitting himself to their control in respect to
all its details.@  Cherqui v. Westheimer St. Festival
Corp., 116 S.W.3d 337, 347 (Tex. App.CHouston [14th
Dist.] 2003, no pet.) (quoting Pitchfork Land & Cattle Co. v. King,
346 S.W.2d 598, 602‑03 (1961)).  The primary concern when evaluating
whether one is an independent contractor or an employee is the degree of
control the general contractor maintains.  See Limestone Prod. Dist.,
Inc. v. McNamara, 71 S.W.3d 308, 312 (Tex. 2002) (AThe test to
determine whether a worker is an employee rather than an independent contractor
is whether the employer has the right to control the progress, details, and
methods of operations of the work.@) (citing Thompson
v. Travelers Indem. Co., 789 S.W.2d 277, 278 (Tex. 1990)); Farrell v.
Greater Houston Transp. Co., 908 S.W.2d 1, 3 (Tex. App.CHouston [1st
Dist.] 1995, writ denied). 








Appellants point to the absence of a written agreement
establishing a general contractor/independent contractor relationship as
evidence that Desco was not an independent contractor of Adrian.  A written
agreement, however, is not required to establish a general
contractor/independent contractor relationship.  See McNamara, 71
S.W.3d at 312 (finding that the essential factor in determining whether one is
an employee, as opposed to an independent contractor, is whether the employer
has a right to control).  Therefore, Appellants= assertion that
there was no written agreement fails to respond to Adrian=s summary judgment
evidence proving that they had no right to control Desco.  Thus, Appellants
have failed to present any evidence raising a material fact issue.  See Phan
Son Van v. Pena, 990 S.W.2d 751, 753 (Tex. 1999) (stating the established
rule that if the moving party produces summary judgment evidence entitling it
to summary judgment, the burden shifts to the nonmovant to present evidence
raising a material fact issue).         

B.      Adrian=s Control over
Desco

Appellants also contend that the degree of control Adrian
had over Desco evidenced an agency relationship.  In the alternative, they
argue that if this Court finds Desco to be an independent contractor, then
Adrian had sufficient control over Desco such that it assumed a duty to ensure
that Desco performed its work safely.  Because both of these arguments rely on
the same facts to prove control, we discuss the common materiality of their
evidence.

Generally, a general contractor does not have a duty to
ensure that an independent contractor safely performs his work.  Shell Oil
Co. v. Khan, 138 S.W.3d 288, 293 (Tex. 2004); Redinger v. Living, Inc.,
689 S.W.2d 415, 418 (Tex. 1985).  However, when the general contractor retains
some control over the independent contractor=s work, it must
exercise that control with reasonable care.  Dow Chem. Co. v. Bright, 89
S.W.3d 602, 607 (Tex. 2002); Redinger, 689 S.W.2d at 418 (adopting the
rule as stated in the Restatement
(Second) of Torts ' 414 (1977)).  A party can prove control
through evidence of a contractual agreement that Aexplicitly assigns
the premises owner a right to control@ or by evidence
that the Aowner actually exercised control over the manner in
which the independent contractor=s work was
performed.@[2]  Bright,
89 S.W.3d at 606 (citing to Koch, 11 S.W.3d at 155).  To prove that the
general contractor breached a pertinent duty, a nexus must be shown between the
general contractor=s retained control and the condition or
activity that caused the injury.  Hoechst‑Celanese Corp. v. Mendez,
967 S.W.2d 354, 356 (Tex. 1998) (per curiam);  Clayton W. Williams, Jr.,
Inc. v. Olivo, 952 S.W.2d 523, 528 (Tex. 1997).








The Redinger line of cases has adopted the comments
to the Restatement of Torts ' 414 which state
that:

In order for the rule stated in
this Section to apply, the employer must have retained at least some degree of
control over the manner in which the work is done. It is not enough that he has
merely a general right to order the work stopped or resumed, to inspect its
progress or to receive reports, to make suggestions or recommendations which
need not necessarily be followed, or to prescribe alterations and deviations.
Such a general right is usually reserved to employers, but it does not mean
that the contractor is controlled as to his methods of work, or as to operative
detail. There must be such a retention of a right of supervision that the
contractor is not entirely free to do the work in his own way.   

Restatement (Second) of Torts ' 414 (quoted in Redinger,
689 S.W.2d at 418); see also Koch, 11 S.W.3d at 155-56 (applying ' 414 in
determining whether the general contractor had requisite degree of control); Hoechst‑Celanese,
967 S.W.2d at 356. 

Appellants argue that several provisions in the Subcontract
Agreement gave Adrian a contractual right of control over Desco.  They have
failed, however, to offer any evidence that the Subcontract Agreement was
actually agreed upon by the parties.  In fact, both Jose de Santiago and Billy
Ray Combs, the two respective principals for Desco and Adrian, testified in their
depositions that the Subcontract Agreement was never signed by both parties. 
As the Supreme Court stated in Bright, to prove contractual right of
control, there must be Aevidence of a contractual agreement that explicitly
assigns the premises owner a right to control.@  Bright,
89 S.W.3d at 606 (emphasis added).  There is, therefore, no evidence that the
rights provided for in the Subcontract Agreement were explicitly assigned to
Adrian.













Appellants next contend that Adrian=s requirement that
Desco maintain liability insurance evidences Adrian=s right to control
Desco.  It is also unclear as to whether this contingency was agreed upon by
the parties.[3] 
Assuming arguendo that Adrian and Desco reached an agreement, we do not
find such a requirement to be a degree of control over Desco sufficient to
establish Adrian=s right of control.  Appellants rely on Pollard
v. Missouri Pac. R.R. to support their contention that the authority to
specify insurance coverage gives rise to a general contractor duty.  759 S.W.2d
670 (Tex. 1988).  In Pollard, Balch, Pollard=s employer, had
contracted with Missouri Pacific Railroad Company (AMOPAC@) to remove
certain poles and wires from one of its right-of-ways.  Id. at 670. 
Pollard sued MOPAC after he was injured while removing one of the poles.  Id. 
In reversing the lower court=s decision, the Supreme Court found that
the lower court had used the wrong standard by evaluating only whether MOPAC
had actually exercised control over Balch, not whether MOPAC had a right to
control Balch.  Id.  The Court further held that the contractual rights
MOPAC retained were sufficient to give rise to a duty to Pollard.  Id. 
The retained contractual rights listed by the Court were: A(1) control over
the completion time of the contract, (2) authority to specify the poles to be
removed, (3) authority to specify insurance coverage, and (4) control over
access and storage of materials involving MOPAC=s right‑of‑way.@  Id. 
Under Appellants= interpretation of Pollard, any one
of the contractual rights the Court mentioned was sufficient to give rise to a
general contractor=s duty.  We believe this is an unduly
limited reading of Pollard.  After listing the four contractual rights
retained by MOPAC, the Supreme Court held, without identifying a specific
right, Athat the
contractual retention of control by MOPAC gives rise to the duty expressly
adopted in Redinger.@  Id.  Nowhere did the Supreme
Court enunciate which individual contractual right, if any, was dispositive to
its decision.  Pollard does not stand for the proposition that the
contractual right to specify insurance coverage alone is sufficient to give
rise to general contractor duties. 

Moreover, the Supreme Court has subsequently made clear
that there must be a nexus between an employer=s retained control
and the condition or activity that caused the injury.  Khan, 138 S.W.3d
at 294; Bright, 89 S.W.3d at 606; Olivo, 952 S.W.2d at 528; Hoechst‑Celanese,
967 S.W.2d at 356.  Many of these cases have addressed whether a general
contractor=s requirement that the independent contractor observe
certain safety guidelines is sufficient control to give rise to a general
contractor duty.  See Khan, 138 S.W.3d at 293-94; Bright,
89 S.W.3d at 607; Hoechst‑Celanese, 967 S.W.2d at 356-58.  As the
Supreme Court stated, the requirement that certain safety procedures be
followed has no reasonable connection with an imposition on the general
contractor of an unqualified duty of care to ensure that the independent contractor=s employees are
kept safe.  See Hoechst‑Celanese, 967 S.W.2d at 357-58 (holding
that the general contractor=s insistence that the independent
contractor comply with safety guidelines Adid not impose an
unqualified duty of care on Celanese [the general contractor] to ensure that
Mundy employees did nothing unsafe@).  Rather, the
right to require the independent contractor to follow certain safety procedures
is commensurate with a duty that the safety requirement Adoes not increase,
rather than decrease, the probability and severity of injury.@  Id. at
358.








Similar to the safety requirements in those cases,
insurance requirements are precautionary measures which have the effect (if not
the purpose) of ensuring that the independent contractor and its employees are
protected from the consequences of mishap.  Because we think that insurance and
safety requirements involve similar considerations, we do not find that the
general contractor=s right to specify insurance coverage
creates an unqualified duty to protect the independent contractor from injury. See
Hoechst‑Celanese, 967 S.W.2d at 357‑58.  It does, however,
obligate the general contractor to ensure that such a requirement does not
increase the probability or severity of injury.  Id. at 358.  We do not
find that Adrian=s requirement of insurance from Desco
increased the probability of Soto falling through the skyglass or increased the
severity of harm therefrom.  Therefore, we find that if such an obligation
existed, no breached duty from that obligation has been shown.[4]


Appellants further posit that AAdrian allowed
Desco to begin work without confirming that Desco had liability insurance . . .
, which shows that Adrian, as principal, had control of when its agent, Desco,
was authorized to begin work.@  This inference is not reasonable based
on the evidence.  See KPMG Peat Marwick, 988 S.W.2d at 748
(stating the rule that Aevery reasonable inference must be
indulged in favor of the nonmovant@) (emphasis
added).  Additionally, the comments to Restatement
(Second) of Torts ' 414, adopted by the Redinger line
of cases, states that Ait is not enough that [the general contractor]
has merely a general right to order the work stopped or resumed.@  Restatement (Second) of Torts ' 414.  Similarly,
we see no reason to impose a duty on the general contractor when they merely
have the right to order the work to begin. 

Finally, Appellants state that Combs= presence at the
jobsite when the work was being performed Asuggests that he
[Combs] had some right of control over how the job was being performed@ and shows that he
Awas aware that
Desco was ignoring safety guidelines and failed to take corrective measures.@  There is no
evidence that Combs observed any violation of safety guidelines.  Moreover, the
inferences that Appellants draw from Combs= presenceCthat Combs had
some right of control over how the job was being performed and was aware that
Desco was ignoring safety guidelinesCare not
reasonable.  See KPMG Peat Marwick, 988 S.W.2d at 748.  Appellants have
failed to offer any facts showing that Adrian had a right of control over Desco
sufficient to justify imposing a duty.

C.      Premises
Defects  








Appellants also claim that Adrian is liable for certain
premises defects.  In the context of general contractor/independent contractor
relationships, the Supreme Court has divided premises defects into two
categories: (1) those existing when an independent contractor enters, and (2)
those created by the independent contractor=s work.  Khan,
138 S.W.3d at 295; Coastal Marine Serv. of Tex., Inc. v. Lawrence, 988
S.W.2d 223, 225 (Tex. 1999).  With respect to the first category of defects,
the premises owner (or general contractor) has a duty to inspect the premises
and warn the independent contractor of concealed hazards about which the owner
knows or should have known.  Khan, 138 S.W.3d at 295.  Appellants do not
allege any concealed defects.  Under the second category, the general
contractor generally has no duty to protect the independent contractor or its
employees from defects that arise as a result of the independent contractor=s work on the
premises.  Khan, 138 S.W.3d at 295; Coastal Marine, 988 S.W.2d at
225. 

However, a premises owner may be
liable when the owner retains the right of supervisory control over work on the
premises.  In determining whether an owner has retained this right to control,
the standard is narrow. The right to control must be more than a general right
to order work to stop and start, or to inspect progress.  The supervisory
control must relate to the activity that actually caused the injury, and grant
the owner at least the power to direct the order in which work is to be done or
the power to forbid it being done in an unsafe manner.  

Coastal
Marine, 988 S.W.2d at 225-26.  Instead of alleging new facts showing Adrian=s right to control
Desco=s work, Appellants
rely on their assertion that Desco was the agent of Adrian at the time of the
accident.  Their reintroduction of the facts used in support of their argument
that Adrian had a right to control Desco, such that Desco was the agent of
Adrian, as support for their premises defect argument is unpersuasive. 

D.      Third
Party v. Employee








In their remaining issues, Appellants alternatively assert
that Soto was a Athird party,@ as opposed to an
employee of Desco, when Soto fell to his death.  Therefore, we must determine
whether there is a material fact issue as to whether Soto was a third party. 
Appellants offer several facts in an attempt to raise such an issue.  First,
they cite Santiago=s deposition testimony to establish that
Soto was an employee of John Hurier, not Desco, at the time of the accident.

Q [Adrian=s trial counsel]:  How
is John Hurier involved?

A [Santiago]:                   John
HurierCthese people were
employees of John Hurier.  John Hurier is a customer of Desco Steel.   

When I explained to him the case that I needed to man the job, he has
laid off these people for about two or three weeks.  I don=t know how long.  He give me the
phone number of Flavio [Soto] to contact him to see if they were still working
or if they wanted to go to work.

Contrary
to appellant=s interpretation, this testimony clearly states that
Hurier had laid off the workers, including Soto, a couple of weeks earlier and
that Hurier was recommending the workers to Santiago for his project.  Any
doubt otherwise is removed by Santiago=s earlier
testimony in the same deposition:

Q [trial counsel]:     Tell me the
next thing that happened after the paperwork went back and forth between you
and Adrian contractors.

A [Santiago]:          They worked
the contract, came to that the material was ready.  We were asked to man the
job.  Took me a few days.  Couldn=t getCdidn=t have enough people.

Q:                         Where
did you find your hands?

A:                          The
hands, I find themCmy customer John Hurier, a couple of weeks
previous he laid off his people.  And I was commenting to him that I needed to
man this job and I didn=t have enough people to go around.  And
then he told me, AWhy don=t you hire the
ones that I laid off two weeks ago.  They=ve been there
about two or three weeks without any job.@ (emphasis added) 


This
testimony makes it clear that Soto had ceased working for Hurier and was
working for Santiago at the time of the accident.








Appellants also construe Combs= testimony as
evidence that Soto was a third party: 

Q [Appellant=s trial counsel]:        And, in
fact, there was an electrician who told you that when you asked him about Jose
[Soto], who John [Hurier] was, he told you, the electrician out on the jobsite
that John was the guy that was doing the job? 

A [Combs]:                                I
remember that.

Q:                                             Is
that right?  Not Jose [Soto]?

A:                                             That=sC

Q:                                             Is
that correct?

A:                                             That
would be correct.

At
best, this confused testimony could be construed to suggest that Soto was not
working on the jobsite.  Such an inference is so unreasonable as to be no
evidence at all, since it is uncontroverted that Soto died while working on the
jobsite.

Appellants next contend that their own response in an
interrogatory listing Hurier, and not Desco, as Soto=s employer is some
evidence of Soto=s status as a third party.  Civil
Procedure Rule 197.3 states A[a]nswers to interrogatories may be used
only against the responding party.@ Tex. R. Civ. P. 197.3.  Thus,
Appellants are unable to use their own interrogatory responses in support of
their own contentions.  See Fisher v. Yates, 988 S.W.2d 730, 731 (Tex.
1998) (finding, in accordance with former Civil Procedure Rule 168(2), that the
appeals court erred in using the plaintiff=s interrogatory in
plaintiff=s favor to defeat the defendant=s motion for
summary judgment); Garcia v. National Eligibility Express, 4 S.W.3d 887,
890 (Tex. App.CHouston [1st Dist.] 1999, no pet.).








Appellants also point to a hospital record filed with their
response to Adrian=s second motion for summary judgment.  The
hospital record is a standardized admission form which appears to have been
filled out when Soto was admitted to the hospital.  In the box for APatient Employer@ and AGuarantor
Employer,@ John Hurier=s name is listed
with an address and telephone number.  It does not appear from the record
though that the person who completed this form had personal knowledge of that
fact or consulted with someone who did have such knowledge.[5] 
It is not our duty to speculate as to the origin of this clearly erroneous
information.  We find that the hospital record, as evidence of Soto being a
third party, is so weak Aas to do no more than create a mere
surmise or suspicion@ as to that fact.  Kindred v. Con/Chem,
Inc., 650 S.W.2d 61, 63 (Tex. 1983) (AWhen the evidence
offered to prove a vital fact is so weak as to do no more than create a mere
surmise or suspicion of its existence, the evidence is no more than a scintilla
and, in legal effect, is no evidence.@); see also
Lozano v. Lozano, 52 S.W.3d 141, 145 (Tex. 2001) (ATo rise above a
scintilla, the evidence offered to prove a vital fact must do more than create
a mere surmise or suspicion of its existence.@).  The hospital
record contrasts with Santiago=s testimony, the only individual on record
who would have had the potential of having personal knowledge of Soto=s employment. 
Santiago confirmed that Soto was employed by Desco at the time of the
accident.  We find that Appellants have presented no evidence sufficient to
raise a material fact issue as to whether Soto was a third party rather than an
employee of Desco.

In conclusion, Appellants have not raised a material fact
issue as to whether Adrian owed a duty to Soto sufficient to support their
negligence claims.  Accordingly, we overrule Appellants= sole issue.  We
affirm the judgment of the trial court.    

 

 

 

 

 

 

/s/      Adele Hedges

Chief Justice

 

 








 

Judgment rendered
and Opinion filed March 13, 2007.

Panel consists of
Chief Justice Hedges and Justices Fowler and Edelman.

 

 

 

 

 









[1]  Note that Appellants contend that there is some
evidence showing Soto to have been John Hurier=s employee at the time of the accident.  As discussed below, they do
not offer any material evidence showing this.  See infra p. 11-14.





[2]  A premises owner and a general contractor both owe
the same duties to an independent contractor=s
employees.  Therefore, the cases considering these duties are used
interchangeably.  Koch Ref. Co. v. Chapa, 11 S.W.3d 153, 155 n. 1
(Tex. 1999).





[3]  The depositions of Santiago and Combs offer
conflicting testimony as to whether the parties agreed upon an insurance
requirement (Santiago even contradicting himself at times).  For instance,
Santiago testified that he Atook the gamble@ to start work for Adrian in hopes that his insurance
certificate would soon arrive.  This could be interpreted as evidence that
Santiago understood some perceived obligation to obtain insurance.  In another
portion of his deposition, however, Santiago testified that he never signed the
Subcontract Agreement because of the provision requiring insurance.  





[4]  We also note the undesirable practical effect of
imposing a general duty of care on any general contractor who requires
insurance from their independent contractor.  Such a holding would create more
liability for a general contractor who takes precautionary measures for the
event of mishap than a general contractor who simply chooses to ignore such a
possibility.  A rule which encourages less preparation for undesirable future
events cannot be a sound rule.

 





[5]  Santiago noted in his deposition that Soto did not
have any family in the country at the time of the accident and that Santiago
had to pay for the body to be shipped to Guatemala.