**COASTAL MARINE SERVICE OF TEXAS, INCORPORATED,**
Petitioner,

v.

**Martha LAWRENCE, individually and as dependent administratrix of The Estate of John Ray Lawrence, deceased and John Roy Lawrence, Respondents.**

No. 98–0287.

Supreme Court of Texas.

April 29, 1999.

Rehearing Overruled April 29, 1999.

**224**

On Petition for Review from the Court of Appeals for the Ninth District of Texas

PER CURIAM.

The issue in this case is whether an independent contractor's willingness to follow a premises owner's instructions, though no such instructions were given, is legally sufficient evidence of the premises owner's "right to control" in a premises liability case. The court of appeals held that it was.[1] We hold that it was not.

On September 20, 1994, John Ray Lawrence, an employee of H.W. Campbell Construction Company, was killed when his head was crushed in the "pinch point" area of a crane. Coastal Marine Services of Texas, Inc. owned the crane, and Campbell employees were using it to offload skids on Coastal's property when the accident occurred. Campbell took custody of the crane and began continued occupation of Coastal's property in 1992. Campbell was an independent contractor of Coastal, and no written contract existed between the two companies.

---

1. 983 S.W.2d 757. The court of appeals' opinion also considered an alleged jury charge error. *Id.* at 761–62. That issue is not before us, and we express no opinion on it.

Coastal employees were not directing or supervising Campbell's work on the project, nor were they on the job site when the accident occurred.

Lawrence's surviving family and estate (the "Lawrences") sued Campbell and Coastal alleging negligence, negligence per se, and gross negligence. During trial Coastal timely moved for a partial directed verdict. Coastal asserted that the Lawrences had presented no evidence that Coastal retained the right to control Campbell's work, a prerequisite for finding Coastal liable under a premises liability theory. The trial court granted Coastal's motion, and then submitted an instruction that precluded a finding of negligence based on the manner in which Coastal controlled the premises.[2] A broad form negligence question was submitted with the jury charge. The jury found no negligence on Coastal's part, and the trial court entered a take-nothing judgment.

At trial, in response to a series of hypothetical questions, Campbell employees testified that they would have complied with any instructions from Coastal about the movement of the crane if Coastal had given such instructions. Based on the Campbell employees' testimony, the court of appeals reversed the trial court's judgment, concluding that the testimony created a fact issue about Coastal's right to control the crane.[3] We disagree.

■ In this case, the Lawrences assert that liability arose from a premises defect. Under the premises defect theory of premises liability there are two subcategories: (1) defects existing on the premises when the independent contractor/invitee entered; and (2) defects the independent contractor created by its work activity.[4]

■ Under the first subcategory, the premises owner has a duty to inspect the premises and warn the independent contractor/invitee of dangerous conditions that are not open and obvious and that the owner knows or should have known exist.[5] As we explained in *Shell Chemical Company v. Lamb*, 493 S.W.2d 742 (Tex. 1973), premises defects of this type are ones "in which the danger did not arise through the work activity of the subcontractor/invitee."[6] Only concealed hazards—dangerous in their own right and independent of action by another—that are in existence when the independent contractor enters the premises fall into this first subcategory of premises defects. For example, in *Smith v. Henger*, 226 S.W.2d 425, 148 Tex. 456 (1950), we held that an open shaft, with inadequate warnings, in existence when contractors entered a property was such a defect.[7] The pinch point area on Coastal's crane, however, posed no danger until Campbell put the crane into operation. Therefore this case must be considered under the second premises defect subcategory.

■ Under the second subcategory— when the dangerous condition arises as a result of the independent contractor's work activity—the premises owner normally owes no duty to the independent contractor's employees because an owner generally has no duty to ensure that an independent contractor performs its work in a safe manner.[8] However, a premises owner may be liable when the owner retains the right of supervi-

---

2. The relevant portion of the instruction reads:

In determining the negligence or gross negligence, if any, of Coastal Marine Service of Texas, Inc., you are instructed that such negligence or gross negligence must relate to the crane in question. As the premises owner, Coastal Marine Service of Texas, Inc. was not subject to any OSHA regulations as they pertain to the premises or safe operation of the project. Further, as the premises owner, Coastal Marine Service of Texas, Inc. had no duty to see that the H.W. Campbell Construction Company or its employees performed the work in a safe fashion.

3. 983 S.W.2d at 761.

4. *See Clayton W. Williams, Jr., Inc. v. Olivo*, 952 S.W.2d 523, 527 (Tex.1997).

5. *See Olivo*, 952 S.W.2d at 527–28; *Shell Chem. Co. v. Lamb*, 493 S.W.2d 742, 746–47 (Tex.1973).

6. 493 S.W.2d at 746 (citing *Smith v. Henger*, 148 Tex. 456, 226 S.W.2d 425 (1950)).

7. 226 S.W.2d at 431–33.

8. *See Olivo*, 952 S.W.2d at 527–28; *Abalos v. Oil Dev. Co.*, 544 S.W.2d 627, 631–32 (Tex.1976).

sory control over work on the premises.[9] In determining whether an owner has retained this right to control, the standard is narrow. The right to control must be more than a general right to order work to stop and start, or to inspect progress.[10] The supervisory control must relate to the activity that actually caused the injury, and grant the owner at least the power to direct the order in which work is to be done or the power to forbid it being done in an unsafe manner.[11]

 Our most recent writing on this issue makes clear that a party can prove the "right to control" in two ways: first, by evidence of a contractual agreement which explicitly assigns the premises owner a right to control; and second, in the absence of a contractual agreement, by evidence that the premises owner actually exercised control over the job.[12] Here, no contractual agreement assigning control rights existed between Coastal and Campbell, and no Coastal employees were directing work on the job site when the accident occurred or at any other time. Instead, the Lawrences showed only that Campbell employees would have taken direction from Coastal if any had been offered. A possibility of control is not evidence of a "right to control" actually retained or exercised.

Accordingly, without hearing oral argument,[13] we reverse the court of appeals' judgment and render judgment that the Lawrences take nothing.

---

**9.** See Olivo, 952 S.W.2d at 528; Lamb, 493 S.W.2d at 747–48.

**10.** See Redinger v. Living, Inc., 689 S.W.2d 415, 418 (Tex.1985).

**11.** See Olivo, 952 S.W.2d at 528; Exxon Corp. v. Tidwell, 867 S.W.2d 19, 23 (Tex.1993); Redinger, 689 S.W.2d at 418.

**12.** See Olivo, 952 S.W.2d at 528; see also Redinger, 689 S.W.2d at 418.

**13.** See Tex.R.App. P. 59.1.