**TEXAS DRYDOCK, INC., Appellant,**

v.

**Louis E. DAVIS, Appellee.**

**No. 09–97–326CV.**

Court of Appeals of Texas, Beaumont.

Submitted March 11, 1999.

Decided Aug. 26, 1999.

Elizabeth B. Pratt, Mehaffy & Weber, Beaumont, John Cash Smith, Cimron Campbell, Mehaffy & Weber, Orange, for appellant.

Mike Jacobellis, Tonahill, Hile, Jacobellis & Dutton, Beaumont, for appellee.

Before BURGESS, STOVER and HILL,* JJ.

## OPINION

DON BURGESS, Justice.

Texas Drydock, Inc., appeals from a judgment in favor of Louis Davis, following a jury trial on Davis's personal injury claim. Davis suffered an injury while working for his employer, Crumpler Shipbuilders, Inc., on a cherry picker crane owned by Texas Drydock. Texas Drydock presents four issues on appeal: (1) Did the trial court commit reversible error by rendering judgment for Davis since Davis presented no evidence that Texas Drydock had any control or right of control over the premises at the time of Davis's alleged accident, thus producing no evidence of any legal duty owed to Davis?; (2) Did the trial court commit reversible error by rendering judgment for Davis after refusing Texas Drydock's jury instruction and jury question on the issue of control, the critical issue necessary to any legal duty owed by

---

* The Honorable John Hill, sitting by assignment pursuant to TEX. GOV'T CODE ANN.

§ 74.003(b) (Vernon 1998).

Texas Drydock, and submitting the case to the jury under an incorrect legal standard over Texas Drydock's objections?; (3) Alternatively, did the trial court commit reversible error by rendering judgment for Davis, since Davis presented only, at best, a mere scintilla of evidence of control by Texas Drydock?; and (4) Even under the incorrect legal standard that was submitted, did the jury's findings of 100% negligence on the part of Texas Drydock and zero negligence on the part of Davis have any support in the evidence or, alternatively, factually sufficient support in the evidence?

At the time of the incident in question, Crumpler Shipbuilding, Davis's employer, maintained and repaired equipment for Texas Drydock. Davis was injured when he jumped from Texas Drydock's cherry picker crane that he was repairing. Texas Drydock's first issue concerns whether the trial court committed reversible error by rendering judgment for Davis since Davis presented no evidence that Texas Drydock had any control or right of control over the premises at the time Davis was injured, thereby producing no evidence of any legal duty Texas Drydock owed him.

■ When considering the legal sufficiency of the evidence, we consider only the evidence and inferences that tend to support the jury's finding, and disregard all evidence and inferences to the contrary. *See Weirich v. Weirich*, 833 S.W.2d 942, 945 (Tex.1992). If there exists any evidence to support the finding, the point will be overruled and the finding upheld. *See Southern States Transp., Inc. v. State*, 774 S.W.2d 639, 640 (Tex.1989). In reviewing a factual sufficiency point, we must weigh all of the evidence in the record. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex.1996). Findings may be overturned only if they are so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Id.*

■ Davis asserted that Texas Drydock was liable based upon both a premises liability theory, as well as negligence based upon section 323 of the Restatement of Torts. The issue of control relates to any claim Davis might have based upon premises liability. Crumpler, Davis's employer, is an independent contractor. A premises owner may be directly liable to an independent contractor's employees under two general theories of premises liability: (1) negligence arising from an activity on the premises; and (2) negligence arising from a premises defect. *See Clayton Williams, Jr., Inc. v. Olivo*, 952 S.W.2d 523, 527 (Tex.1997) (involving premises defect theory) and *Redinger v. Living, Inc.*, 689 S.W.2d 415, 417 (Tex.1985) (involving negligent activity theory). Under either theory, proof of the owner's right of control is an explicit requirement. *See Olivo*, 952 S.W.2d at 528; *Redinger*, 689 S.W.2d at 418.

■ There are two subcategories under the premises defect theory: (1) defects existing on the premises when the independent contractor/invitee entered; and (2) defects the independent contractor created by its work activity. *Coastal Marine Serv. of Tex., Inc. v. Lawrence*, 988 S.W.2d 223, 225 (Tex.1999). "Under the first subcategory, the premises owner has a duty to inspect the premises and warn the independent contractor/invitee of dangerous conditions that are not open and obvious and that the owner knows or should have known exist." *Id.*

■ When the dangerous condition arises as a result of the independent contractor's work activity, the premises owner normally owes no duty to the independent contractor's employees because an owner generally has no duty to ensure that an independent contractor performs its work in a safe manner. *Id.* A premises owner may be liable when it retains the right of supervisory control over work on the premises. *Id.* at 225–26. The right to control must be more than a general right to order work to stop and start, or to inspect progress. *Id.* at 226. The supervisory control must relate to the activity

that actually caused the injury, and grant the owner at least the power to direct the order in which work is to be done or the power to forbid it being done in an unsafe manner. *Id.*

■ A party can prove the right to control in two ways: first, by evidence of a contractual agreement that explicitly assigns the premises owner a right to control; and second, in the absence of a contractual agreement, by evidence that the premises owner actually exercised control over the job. *Id.*

■ In this case, no evidence was presented as to any contractual agreement between Crumpler and Texas Drydock that explicitly assigns Texas Drydock a right to control. However, there is some evidence that Texas Drydock exercised control by requiring that the cherry picker crane in question not be steam cleaned prior to its being repaired. The jury could reasonably have determined that it was negligent to impose such a requirement and that it was the failure to steam clean that proximately caused Davis's injury. We hold that the evidence is legally sufficient to prove that Texas Drydock actually exercised some control over the work.

Texas Drydock also contends that the evidence is factually insufficient to prove that Texas Drydock retained any control. As we have noted, there was no evidence that Texas Drydock contractually retained control, but there was evidence that it actually exercised control. Texas Drydock refers us to extensive evidence, including evidence from Davis's supervisor, to the effect that Crumpler maintained control over the work and that Texas Drydock did not have or exercise any control over the work. Davis's supervisor denied telling Davis that he was not to steam clean the cherry picker crane or that Texas Drydock did not want it cleaned. Despite the conflicting testimony, however, we do not find that the jury's verdict is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust.

We overrule the contentions presented in appellant's issues numbers one and three.

■ Texas Drydock insists in issue two that the trial court committed reversible error by rendering judgment for Davis after refusing its jury question and instruction on the issue of control. In a case such as this one, the injured plaintiff must establish the defendant's right to control the defect-producing work and a breach of that duty according to the traditional elements of premises liability as set forth in *Corbin v. Safeway Stores, Inc.,* 648 S.W.2d 292, 296 (Tex.1983). *See Olivo,* 952 S.W.2d at 529. The trial court declined to submit any question or instruction on the issue of Texas Drydock's control, submitting only a broad form negligence question. Such a question will not support recovery for a premises defect. *Id.*

Davis contends that the trial court did not err by failing to submit the issue of control because this is not a premises liability case at all, but instead is a claim under RESTATEMENT (SECOND) OF TORTS § 323 (1965). This section provides that:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if (a) his failure to exercise such care increases the risk of harm, or (b) the harm is suffered because of the other's reliance upon the undertaking.

*Id.* The Texas Supreme Court has adopted this section of the Restatement. *See Colonial Savings Ass'n v. Taylor,* 544 S.W.2d 116, 119–20 (Tex.1976).

■ Davis testified that prior to the accident in question he had asked Bill Hardy, the safety coordinator for Texas Drydock, for some non-skid tape. He indicated Hardy told him to go ahead and get it. He stated that when he told Hardy that he

did not know where to buy it, Hardy told him that he would check into it to see if he could find and get him some. According to Davis, about two or three weeks later, when he asked Hardy about the tape, Hardy told him that it was hard to find and that he was still working on getting some. The last time he talked to Hardy about it Hardy told him that he was still checking into it.

In *Fort Bend County Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 396–97 (Tex. 1991), the Texas Supreme Court considered this issue. The court noted that the American Law Institute expressed no opinion as to whether the making of a promise, without entering upon performance, is a sufficient undertaking. *Id.* at 396. The court stated "[a] mere promise to render a service coupled with neither performance nor reliance imposes no tort obligation upon the promisor" and recognized that some courts "have imposed liability for breach of a promise alone in which there had been no performance but where the plaintiff's harm resulted from reliance on the promise." *Id.* The court then noted in the case before it, there was "neither the slightest performance by the promisor nor reliance by the injured party." *Id.* The court then found they "need not decide whether such reliance on the promise alone would give rise to liability. Without some affirmative course of action beyond the making of a mere promise or without reliance on that promise, the [defendant] cannot be held liable for [the plaintiff's] injuries." *Id.* at 397.

To summarize, the court in *Fort Bend* found that a promise without either performance or reliance was not an undertaking, and expressly declined to decide whether a promise with reliance was an undertaking. But section 323 provides that "[o]ne who undertakes ... to render services to another ... is subject to liability ... if (a) his failure to exercise such care increases the risk of harm, or (b) the harm is suffered because of the other's reliance upon the undertaking." Thus, section 323 provides that if either an increased risk of harm or reliance is present, only "an undertaking" is required to establish liability. The question, therefore, is whether "an undertaking" requires more than a promise, i.e., does it require "in any way entering upon performance." We find it does not.

■ Rather, we find a promise can constitute an undertaking. This is not inconsistent with either the ALI's comment or *Fort Bend* because under section 323 there still must be, in addition to the promise, either an increased risk of harm or reliance. Accordingly, we find Hardy's representations, coupled with Davis' reliance, constitute an undertaking of an affirmative course of action such that Davis had a basis for a claim under section 323 of the Restatement.

Thus, although Davis failed to obtain a jury finding on an essential element of any claim he might have had based upon premises liability, Davis had a viable cause of action based upon another theory of liability. Texas Drydock's contentions contained in issue two are overruled.

■ Texas Drydock argues in its final issue the evidence is both legally and factually insufficient to support the jury's findings of zero negligence on the part of Davis and 100% negligence on the part of Texas Drydock. Although Texas Drydock asserts "the record is replete with evidence that [Davis'] own negligence, alone, caused the accident," no record references are given.[1] *See* Tex. R. App. P. 38.1(h). We are not required to search the record without guidance to determine the validity of a claim of reversible error. *Casteel–Diebolt v. Diebolt*, 912 S.W.2d 302, 305 (Tex.App.—Houston [14th Dist.] 1995, no writ) (citing *Stevens v. Stevens*, 809 S.W.2d

---

1. Although Texas Drydock does refer this court to "the discussion set forth in the Statement of Facts," that discussion is quite lengthy; considerably longer, in fact, than the entire argument.

512, 513 (Tex.App.—Houston [14th Dist.] 1991, no writ); *Most Worshipful Prince Hall v. Jackson,* 732 S.W.2d 407, 412 (Tex. App.—Dallas 1987, writ ref'd n.r.e.)).

Instead, the burden is on appellant to demonstrate the record supports her contentions and to make accurate references to the record to support her complaints on appeal. *Elder v. Bro,* 809 S.W.2d 799, 801 (Tex.App.—Houston [14th Dist.] 1991, writ denied); The failure to cite to relevant portions of the trial court record waives appellate review. *Tacon Mechanical Contractors v. Grant Sheet,* 889 S.W.2d 666, 671 (Tex. App.—Houston [14th Dist.] 1994, writ denied).

*Casteel–Diebolt,* 912 S.W.2d at 305. Accordingly, issue four is overruled.

The judgment of the trial court is AFFIRMED.

JOHN HILL, Justice (Assigned), dissenting.

I respectfully dissent, because the statements made to Davis by Bill Hardy, safety coordinator for Texas Drydock, as set forth in the majority opinion, do not constitute an undertaking of an affirmative course of action. *See Fort Bend County Drainage Dist. v. Sbrusch,* 818 S.W.2d 392, 396–97 (Tex.1991). The words of § 323 of the Restatement require that there be such an undertaking. Under the terms of that section, there is liability only for one who undertakes to render services to another. In *Colonial Savings Ass'n v. Taylor,* 544 S.W.2d 116, 119 (Tex.1976), the Texas Supreme Court states the rule contained in § 323 as imposing liability upon one who voluntarily undertakes an affirmative course of action for the benefit of another. The Texas Supreme Court in *Fort Bend* held that words such as those used by Hardy "do not constitute an undertaking of an affirmative course of action." *Fort Bend,* 818 S.W.2d at 396–97. The subsequent reference to "reliance" in § 323 relates to when someone who has engaged in such an undertaking may be liable, but it does not impose liability when there is reliance but no undertaking. *See also Houston Milling Co. v. Carlock,* 183 S.W.2d 1013, 1014 (Tex.App.—Eastland 1944, no writ), a pre-Restatement case.

It is true, as the majority notes, that the American Law Institute has expressed no opinion, with respect to § 323 of the Restatement, as to whether the making of a gratuitous promise, without in any way entering upon performance, is a sufficient undertaking to result in liability under that section. It is also true that the Texas Supreme Court in *Fort Bend* indicated that it did not decide whether reliance on such promises alone would give rise to liability. *Fort Bend,* 818 S.W.2d at 397. However, it is my view that what the court did decide in *Fort Bend* leads to the logical determination of the case before us because everyone agrees that the undertaking of an affirmative course of action is required, but the Supreme Court has said that mere promises such as those here do not constitute an affirmative course of action.

There is a division of authority in the United States over the issue of whether there may be liability under § 323 for the making of a promise alone, without the taking of any affirmative course of action, where the plaintiff has suffered injury as a result of reliance upon the promise. On the one hand, there is a large body of case law that has built up which holds that a mere gratuitous promise to render service or assistance, with nothing more, imposes no tort obligation upon the promisor, even though the plaintiff may rely upon the promise and suffer damage because of the reliance. See W. Page Keeton et al., Prosser and Keeton on the Law of Torts, § 56, at 379 (5th ed.1984). The authors acknowledge that there are other decisions possibly representing the beginning of the overthrow of that traditional rule. See id. at 380. It appears to me that the rule in Texas, for more than fifty years, as announced in Houston Milling, has been that there is no liability imposed on one who

undertakes to do something that it is not contractually or otherwise obligated to do and then fails to keep that promise. My view is reinforced when the Texas Supreme Court announces in Fort Bend that mere promises such as Hardy made here do not constitute an undertaking of an affirmative course of action, especially where it has previously indicated, in Colonial Savings, that liability under this section of the Restatement is imposed on those who have undertaken an affirmative course of action. I therefore conclude that Texas up to now has followed the traditional rule.

It may reasonably be argued that the rule should be reexamined and that Texas should abandon the traditional rule in favor of the modern rule. It may be for that reason that the Supreme Court left the issue open in Fort Bend. However, I would hold that as an intermediate court we should follow the traditional rule, a rule that has been in place in Texas for so many years, and which may still be the majority rule, until the Texas Supreme Court determines that we are to abandon it in favor of another rule.

Inasmuch as Davis has no claim based upon § 323 of the Restatement, because the evidence shows that Texas Drydock did not enter into an affirmative course of action, and inasmuch as he failed to obtain a finding on an essential element of his claim based upon premises liability, his only viable cause of action, I would reverse this cause and render judgment that Davis take nothing.