COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-06-318-CV

 

 

JAMIE PIERCE                                                                     APPELLANT

 

                                                   V.

 

CHARTER BUILDERS, LTD                                                       APPELLEE

 

                                              ------------

 

            FROM
THE 362ND DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

I. Introduction

In two issues Appellant Jamie
Pierce appeals the trial court=s granting of Appellee Charter Builders Ltd.=s (ACharter@) combined no evidence and traditional motion for summary
judgment.  We affirm.  

 








II. Factual and Procedural
Background

This is the case of the
alleged Acontrolling contractor.@  The case arose out of a
construction work accident.  At the time
of the accident Pierce was employed as an electrician by TD Industries (ATDI@), the
electrical subcontractor for the construction project (Athe project@).  Charter was the general contractor for the
project.

In his deposition testimony,
Pierce testified that on the day of the incident he and Chris Hankins were
instructed by James Beck to Agrab a ladder and go down to [the] southwest corner of the building to
wire up a 480-volt security lighting.@  Beck was a foreman on the
project and was employed by TDI.  When
Pierce arrived at the installation location he realized it was muddy and that
perhaps they should not perform the wiring. 
Pierce informed Beck of the muddy conditions and of his opinion that
they should not be working outside.  Beck
replied that Charter needed the work done and for Pierce to just make it as
safe as he could.  When Pierce further
protested, Beck told him that the alternative was to go home without pay.








Pierce and Hankins proceeded
to sink the ladder as deep as they could into the mud in an attempt to sturdy
it.  Both men went up the ladder several
times because they were trying to figure out the wiring configuration of the
lighting.  Pierce was the last man on the
ladder and was wearing his tool belt and tools which weighed around twenty-five
to thirty pounds.  As Pierce came down,
the ladder gave way and he fell to the ground. 
Pierce landed in the mud feet first which caused his entire body to
swing all the way around.  He felt a Apop@ in his
lower back and pain in his right foot. 
After Pierce landed, Hankins asked him if he was okay and Pierce replied
that he was Afine.@

Pierce then proceeded to
carry the ladder to the next light fixture. 
After arriving at the next light fixture and setting up the ladder with
Hankins>s assistance, Pierce realized he had been injured in the fall.  Specifically, Pierce complained to Hankins
that his back was beginning to hurt and he subsequently fell to the ground in
pain.

On March 16, 2005, Pierce
filed his original petition against Charter and TDI alleging their negligence
caused his injuries.  On April 8, 2005,
the trial court signed an order granting Pierce=s nonsuit of his claims against TDI. 
On October 13, 2005, Charter filed a motion for leave to designate TDI
as a responsible third party and filed an unopposed amended motion seeking the
same on December 14, 2005.  The trial
court granted the amended motion on December 16, 2005.  On June 16, 2006, Charter filed a combined
traditional and no evidence motion for summary judgment, which the trial court
granted on all grounds.  This appeal
followed.  

 








III. No Evidence Motion for
Summary Judgment  

In his second issue, Pierce
argues that the trial court erred by granting Charter=s no evidence motion for summary judgment.  We disagree. 

A. Standard of Review 

After an adequate time for
discovery, the party without the burden of proof may, without presenting
evidence, move for summary judgment on the ground that there is no evidence to
support an essential element of the nonmovant=s claim or defense.  Tex. R. Civ. P. 166a(i).  The motion must specifically state the
elements for which there is no evidence. 
Id.; Johnson v. Brewer & Pritchard, P.C., 73 S.W.3d 193, 207
(Tex. 2002).  The trial court must grant
the motion unless the nonmovant produces summary judgment evidence that raises
a genuine issue of material fact.  See
Tex. R. Civ. P. 166a(i) &
cmt.; Sw. Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002).

When reviewing a no evidence
summary judgment, we examine the entire record in the light most favorable to
the nonmovant, indulging every reasonable inference and resolving any doubts
against the motion.  Sudan v. Sudan,  199 S.W.3d 291, 292 (Tex. 2006).  If the nonmovant brings forward more than a
scintilla of probative evidence that raises a genuine issue of material fact,
then a no evidence summary judgment is not proper.  Moore v. K Mart Corp., 981 S.W.2d 266,
269 (Tex. App.CSan Antonio
1998, pet. denied).








B. Contractual Control 

As pointed out by the
parties, the relevant portions of the subcontract are as follows: 

SCOPE
OF WORK: . . .  Subcontractor [TDI]
agrees to provide at his own cost and expense all supervision, labor,
materials, machinery, tools, scaffolding, hoisting facilities, and any other
items necessary to timely and fully complete the following work in strict
accordance with the Contract Documents[.] [Emphasis supplied.]

 

COMMENCEMENT
AND COMPLETION OF THE WORK: Time is of the essence of this Subcontract, Subcontractor
[TDI] agrees to supply supervision, material, labor and equipment as
necessary to commence his work when directed by Construction Manager
[Charter].  He shall diligently pursue
the completion of his work, and coordinate his work with that being done on the
project by [Charter] and other trades so that his work or the work of others shall
not be delayed or impaired by any act or omission of an act by [TDI]. [Charter]
shall have complete control of the premises on which work is being performed
and shall have the right to decide the time and order in which the various
portions of the work shall be installed or the priority of the work of other
subcontractors, and, in general, all matters representing the timely and
orderly conduct of the work of [TDI] on the premises. [Charter] may prepare
a coordinated Progress Schedule for the benefit of [Charter] and all
subcontractors, and if he does so, [TDI] is required to perform his work in
accordance with such Schedule or as it may be modified by [Charter] from time
to time as work progresses. [Emphasis supplied.] 

 








Contract construction is a
matter of law for the trial court.  See
Edwards v. Lone Star Gas Co., 782 S.W.2d 840, 841 (Tex. 1990).  A court=s primary concern is to ascertain and give effect to the parties= intentions as expressed in the instrument.  See Forbau v. Aetna Life Ins. Co., 876
S.W.2d 132, 133 (Tex. 1994).

A general contractor normally
does not have a duty to see that an independent contractor performs work
safely.[2]  Elliott-Williams Co. v. Diaz, 9 S.W.3d
801, 803 (Tex. 1999).  But a duty may
arise when a general contractor retains some control over the manner in which
the independent contractor=s work is performed.  Id.  Furthermore, a contract may impose
control upon a party thereby creating a duty of care.  Id. at 804.  If the right of control over work details
has a contractual basis, the circumstance that no actual control was exercised
will not absolve the general contractor of liability.  Id. 









For a general contractor to
be liable for its independent contractor=s acts, it must have the right to control the means, methods, or
details of the independent contractor=s work.  See Coastal Marine
Serv. of Tex., Inc. v. Lawrence, 988 S.W.2d 223, 226 (Tex. 1999).  Stated another way, the general contractor
must have the right to control the means, methods, or details of the
independent contractor=s work, to
the extent that the independent contractor is not entirely free to do the work
his own way.  See Elliott‑Williams,
9 S.W.3d at 804.  Moreover, the control
must relate to the injury the negligence causes, and the contract must grant
the contractor at least the power to direct the order in which work is to be
done.  See id.  It is not enough that the general contractor
has the right to order work to stop and start, to inspect progress, or to
recommend a safe manner for the independent contractor=s employees to perform their work. 
See Dow Chem. Co. v. Bright, 89 S.W.3d 602, 607B08 (Tex. 2002); Lawrence, 988 S.W.2d at 226.  It is not enough that the independent
contractor=s employees
would have taken direction from the general contractor if any had been
offered.  Lawrence, 988 S.W.2d at
226.  AA possibility of control is not evidence of a >right to control= actually
retained or exercised.@  Id.








Under the contract TDI, not
Charter, was responsible for the supervision of TDI=s employees including Pierce. 
Furthermore, the contract simply provided that Charter would retain
control of the premises and ensure that the work of the project would be done
in an orderly and timely manner.  Every
general contractor must have the right to arrange the order and timeliness of
the work performed by various subcontractors for the purpose of having the work
of the project completed properly and efficiently.  Nothing in the contract indicates that
Charter had the right to control the means, methods, or details of TDI=s work, to the extent that TDI was not entirely free to do the work
its own way.  See Elliott‑Williams,
9 S.W.3d at 804.

After reviewing the entire
record in the light most favorable to Pierce, indulging every reasonable
inference and resolving any doubts against the motion, we hold that Pierce
failed to produce a scintilla of probative evidence that raises a genuine issue
of material fact as to Charter=s contractual control over TDI=s work.  See Moore, 981
S.W.2d at 269.      

C. Actual Control

Again, a general contractor=s duty to a subcontractor may arise when the general contractor
retains some control over the manner in which the independent contractor=s work is performed.  Elliott‑Williams,
9 S.W.3d at 803.  The general contractor=s duty of care is commensurate with the control it retains over the
independent contractor=s work.  Id. 
If the general contractor has no control over the independent
contractor=s work, then
a legal duty does not arise.  Id. at
803B04.       

Charter=s lack of actual control over TDI=s work is evidenced by the testimony of TDI=s foreman at the project, Beck. 
The relevant portions of Beck=s testimony were as follows:

Q.
Okay. And who decided what materials were going to be used to put up those lights?

 








A.
[Beck] We did - - or TD[I] did.

 

. . . .

Q. Did Charter [] ever get
involved in telling you how to do your work?

A. No.

. . . .

Q.
Okay. To your knowledge, did anybody from Charter tell either yourself or Mr.
Pierce or Mr. Hankins how to work on those lights that day?

 

A. No.

 

Q. What tools to use?

 

A. No.

 

Q. What equipment to use?

 

A. No.

 

. . . .

 

Q. .
. . Did Charter ever actually come to you and say, This is the way we want
something done?  Not we need this done,
we need you to put in this wall socket, but did they ever come to you and say,
This wall socket needs to be installed in this manner, and this is how you=re
going to do it, you=re
going to put this plug here and that conduit here?  Did they ever do that?

 

A.
No.

 

Q.
Okay.  They never gave you any specific
instructions on how to do your job; is that fair?  

 

A. That>s
fair, yes.








Beck also testified that he
decided which employees would work on the lights and that no Charter employees
were involved in the installation of the lights.  According to Beck, the only part Charter had
in installing the lights was deciding where the lights would be put up.  Pierce himself even testified that he had not
received any communication, papers, or anything from Charter.

The summary judgment evidence
unequivocally indicates that TDI retained control over its own work.  TDI, through its foreman, Beck, exercised
complete control over the means, methods, and details of its work.  It was Beck, not Charter, who, on behalf of
TDI, instructed Pierce to obtain a ladder to work on the lighting in the muddy
conditions.        








Pierce asserts that Charter
exercised actual control because it had on-site personnel at all times, had
safety personnel on the project, and held regular job-site meetings regarding
the progress and manner of TDI=s work.  In support of this
assertion Pierce cites Bright.  89
S.W.3d at 606 (citing Chapa, 11 S.W.3d at 156).  However, Bright plainly states that
the mere fact that a general contractor=s safety employee was present to tell its subcontractor=s employees if they were doing something wrong and to remind them to
do the job in a safe manner was insufficient to establish actual control.  See Bright, 89 S.W.3d at 606.  Moreover, the general contractor=s having such an employee on site is not evidence that the
subcontractor and its employee were not free to do their work in their own way
and is not evidence that the general contractor controlled the method of work
or its operative details.  See
id.         

Pierce also argues that
Charter=s purchasing of the lights and deciding on the location of the lights
is further evidence of Charter=s actual control over TDI=s work.  However, Pierce does
not cite us to any authority, nor have we found any that indicates that a
general contractor=s on-site
personnel, regular progress meetings, purchase of supplies, or decision of
where to place lights rises to the level of actual control.  

After reviewing the entire
record in the light most favorable to Pierce, indulging every reasonable
inference and resolving any doubts against the motion, we hold that Pierce
failed to produce a scintilla of probative evidence that raises a genuine issue
of material fact as to Charter=s exercise of actual control over TDI=s work.  See Moore, 981
S.W.2d at 269.  

Accordingly, we overrule
Pierce=s second issue.[3]    

 

 

 








IV. Conclusion 

We affirm the trial court=s judgment.  

 

 

 

BOB MCCOY

JUSTICE

 

PANEL B:   DAUPHINOT, HOLMAN, and MCCOY, JJ.

 

DELIVERED:
April 12, 2007











[1]See Tex. R. App. P. 47.4.





[2]We
note that cases considering the duties of premises owners and general
contractors are used interchangeably.  Clayton
W. Williams Jr., Inc. v. Olivo, 952 S.W.2d 523, 527B28
(Tex. 1997).  Similarly, a general
contractor owes the same duty as a premises owner to an independent contractor=s
employee.  Koch Ref. Co. v. Chapa,
11 S.W.3d 153, 155 n.1 (Tex. 1999).     





[3]In
light of our disposition of Pierce=s second issue, we need not
address his first issue which complains of the granting of Charter=s
traditional motion for summary judgment. 
See Ford Motor Co. v. Ridgway, 135 S.W.3d 598, 600 (Tex.
2004).