COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-06-318-CV

JAMIE PIERCE APPELLANT

V.

CHARTER BUILDERS, LTD APPELLEE

------------

FROM THE 362ND DISTRICT COURT OF DENTON COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I. Introduction

In two issues Appellant Jamie Pierce appeals the trial court’s granting of Appellee Charter Builders Ltd.’s (“Charter”) combined no evidence and traditional motion for summary judgment.  We affirm.  

II. Factual and Procedural Background

This is the case of the alleged “controlling contractor.”  The case arose out of a construction work accident.  At the time of the accident Pierce was employed as an electrician by TD Industries (“TDI”), the electrical subcontractor for the construction project (“the project”).  Charter was the general contractor for the project.

In his deposition testimony, Pierce testified that on the day of the incident he and Chris Hankins were instructed by James Beck to “grab a ladder and go down to [the] southwest corner of the building to wire up a 480-volt security lighting.”  Beck was a foreman on the project and was employed by TDI.  When Pierce arrived at the installation location he realized it was muddy and that perhaps they should not perform the wiring.  Pierce informed Beck of the muddy conditions and of his opinion that they should not be working outside.  Beck replied that Charter needed the work done and for Pierce to just make it as safe as he could.  When Pierce further protested, Beck told him that the alternative was to go home without pay.

Pierce and Hankins proceeded to sink the ladder as deep as they could into the mud in an attempt to sturdy it.  Both men went up the ladder several times because they were trying to figure out the wiring configuration of the lighting.  Pierce was the last man on the ladder and was wearing his tool belt and tools which weighed around twenty-five to thirty pounds.  As Pierce came down, the ladder gave way and he fell to the ground.  Pierce landed in the mud feet first which caused his entire body to swing all the way around.  He felt a “pop” in his lower back and pain in his right foot.  After Pierce landed, Hankins asked him if he was okay and Pierce replied that he was “fine.”

Pierce then proceeded to carry the ladder to the next light fixture.  After arriving at the next light fixture and setting up the ladder with Hankins‘s assistance, Pierce realized he had been injured in the fall.  Specifically, Pierce complained to Hankins that his back was beginning to hurt and he subsequently fell to the ground in pain.

On March 16, 2005, Pierce filed his original petition against Charter and TDI alleging their negligence caused his injuries.  On April 8, 2005, the trial court signed an order granting Pierce’s nonsuit of his claims against TDI.  On October 13, 2005, Charter filed a motion for leave to designate TDI as a responsible third party and filed an unopposed amended motion seeking the same on December 14, 2005.  The trial court granted the amended motion on December 16, 2005.  On June 16, 2006, Charter filed a combined traditional and no evidence motion for summary judgment, which the trial court granted on all grounds.  This appeal followed.  

III. No Evidence Motion for Summary Judgment  

In his second issue, Pierce argues that the trial court erred by granting Charter’s no evidence motion for summary judgment.  We disagree. 

A. Standard of Review 

After an adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for summary judgment on the ground that there is no evidence to support an essential element of the nonmovant’s claim or defense.  
Tex. R. Civ. P.
 166a(i).  The motion must specifically state the elements for which there is no evidence.  
Id.; Johnson v. Brewer & Pritchard, P.C., 
73 S.W.3d 193, 207 (Tex. 2002).  The trial court must grant the motion unless the nonmovant produces summary judgment evidence that raises a genuine issue of material fact.  
See
 
Tex. R. Civ. P.
 166a(i) & cmt.; 
Sw. Elec. Power Co. v. Grant, 
73 S.W.3d 211, 215 (Tex. 2002).

When reviewing a no evidence summary judgment, we examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion.  
Sudan v. Sudan,
  199 S.W.3d 291, 292 (Tex. 2006).  If the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no evidence summary judgment is not proper.  
Moore v. K Mart Corp.
, 981 S.W.2d 266, 269 (Tex. App.—San Antonio 1998, pet. denied).

B. Contractual Control 

As pointed out by the parties, the relevant portions of the subcontract are as follows: 

SCOPE OF WORK: . . .  Subcontractor [TDI] agrees to provide at his own cost and expense 
all supervision
, labor, materials, machinery, tools, scaffolding, hoisting facilities, and any other items necessary to timely and fully complete the following work in strict accordance with the Contract Documents[.] [Emphasis supplied.]

COMMENCEMENT AND COMPLETION OF THE WORK: Time is of the essence of this Subcontract, 
Subcontractor
 
[TDI] agrees to supply supervision
, material, labor and equipment as necessary to commence his work when directed by Construction Manager [Charter].  He shall diligently pursue the completion of his work, and coordinate his work with that being done on the project by [Charter] and other trades so that his work or the work of others shall not be delayed or impaired by any act or omission of an act by [TDI]. 
[Charter] shall have complete control of the premises on which work is being performed and shall have the right to decide the time and order in which the various portions of the work shall be installed or the priority of the work of other subcontractors, and, in general, all matters representing the timely and orderly conduct of the work of [TDI] on the premises. 
[Charter] may prepare a coordinated Progress Schedule for the benefit of [Charter] and all subcontractors, and if he does so, [TDI] is required to perform his work in accordance with such Schedule or as it may be modified by [Charter] from time to time as work progresses. [Emphasis supplied.] 

Contract construction is a matter of law for the trial court.  
See Edwards v. Lone Star Gas Co.
, 782 S.W.2d 840, 841 (Tex. 1990).  A court’s primary concern is to ascertain and give effect to the parties’ intentions as expressed in the instrument.  
See Forbau v. Aetna Life Ins. Co.
, 876 S.W.2d 132, 133 (Tex. 1994).

A general contractor normally does not have a duty to see that an independent contractor performs work safely.
(footnote: 2)  
Elliott-Williams Co. v. Diaz
, 9 S.W.3d 801, 803 (Tex. 1999).  But a duty may arise when a general contractor retains some control over the manner in which the independent contractor’s work is performed.  
Id.  
Furthermore,
 
a contract may impose control upon a party thereby creating a duty of care.  
Id. 
at 804
.  
If the right of control over work details has a contractual basis, the circumstance that no actual control was exercised will not absolve the general contractor of liability.  
Id.
  

For a general contractor to be liable for its independent contractor’s acts, it must have the right to control the means, methods, or details of the independent contractor’s work.  
See Coastal Marine Serv. of Tex., Inc. v. Lawrence
, 988 S.W.2d 223, 226 (Tex. 1999).  Stated another way, the general contractor must have the right to control the means, methods, or details of the independent contractor’s work, to the extent that the independent contractor is not entirely free to do the work his own way.  
See Elliott-Williams
, 9 S.W.3d at 804.  Moreover, the control must relate to the injury the negligence causes, and the contract must grant the contractor at least the power to direct the order in which work is to be done.  
See id.
  It is not enough that the general contractor has the right to order work to stop and start, to inspect progress, or to recommend a safe manner for the independent contractor’s employees to perform their work.  
See Dow Chem. Co. v. Bright
, 89 S.W.3d 602, 607–08 (Tex. 2002); 
Lawrence
, 988 S.W.2d at 226.  It is not enough that the independent contractor’s employees would have taken direction from the general contractor if any had been offered.  
Lawrence
, 988 S.W.2d at 226.  “A possibility of control is not evidence of a ‘right to control’ actually retained or exercised.”  
Id.

Under the contract TDI, not Charter, was responsible for the supervision of TDI’s employees including Pierce.  Furthermore, the contract simply provided that Charter would retain control of the premises and ensure that the work of the project would be done in an orderly and timely manner.  Every general contractor must have the right to arrange the order and timeliness of the work performed by various subcontractors for the purpose of having the work of the project completed properly and efficiently.  Nothing in the contract indicates that Charter had the right to control the means, methods, or details of TDI’s work, to the extent that TDI was not entirely free to do the work its own way.  
See Elliott-Williams
, 9 S.W.3d at 804.

After reviewing the entire record in the light most favorable to Pierce, indulging every reasonable inference and resolving any doubts against the motion, we hold that Pierce failed to produce a scintilla of probative evidence that raises a genuine issue of material fact as to Charter’s contractual control over TDI’s work.  
See Moore
, 981 S.W.2d at 269.   

C. Actual Control

Again, a general contractor’s duty to a subcontractor may arise when the general contractor retains some control over the manner in which the independent contractor’s work is performed.  
Elliott-Williams
, 9 S.W.3d at 803.  The general contractor’s duty of care is commensurate with the control it retains over the independent contractor’s work.  
Id.  
If the general contractor has no control over the independent contractor’s work, then a legal duty does not arise.  
Id. 
at 803–04.       

Charter’s lack of actual control over TDI’s work is evidenced by the testimony of TDI’s foreman at the project, Beck.  The relevant portions of Beck’s testimony were as follows:

Q. Okay. And who decided what materials were going to be used to put up those lights?

A. [Beck] We did - - or TD[I] did.

. . . .

Q. Did Charter [] ever get involved in telling you how to do your work?

A. No.

. . . .

Q. Okay. To your knowledge, did anybody from Charter tell either yourself or Mr. Pierce or Mr. Hankins how to work on those lights that day?

A. No.

Q. What tools to use?

A. No.

Q. What equipment to use?

A. No.

. . . .

Q. . . . Did Charter ever actually come to you and say, This is the way we want something done?  Not we need this done, we need you to put in this wall socket, but did they ever come to you and say, This wall socket needs to be installed in this manner, and this is how you’re going to do it, you’re going to put this plug here and that conduit here?  Did they ever do that?

 

A. No.

Q. Okay.  They never gave you any specific instructions on how to do your job; is that fair?  

A. That‘s fair, yes.

Beck also testified that he decided which employees would work on the lights and that no Charter employees were involved in the installation of the lights.  According to Beck, the only part Charter had in installing the lights was deciding where the lights would be put up.  Pierce himself even testified that he had not received any communication, papers, or anything from Charter.

The summary judgment evidence unequivocally indicates that TDI retained control over its own work.  TDI, through its foreman, Beck, exercised complete control over the means, methods, and details of its work.  It was Beck, not Charter, who, on behalf of TDI, instructed Pierce to obtain a ladder to work on the lighting in the muddy conditions.        

Pierce asserts that Charter exercised actual control because it had on-site personnel at all times, had safety personnel on the project, and held regular job-site meetings regarding the progress and manner of TDI’s work.  In support of this assertion Pierce cites 
Bright
.  89 S.W.3d at 606 (citing 
Chapa
, 11 S.W.3d at 156).  However, 
Bright
 plainly states that the mere fact that a general contractor’s safety employee was present to tell its subcontractor’s employees if they were doing something wrong and to remind them to do the job in a safe manner was insufficient to establish actual control.  
See Bright, 
89 S.W.3d at 606.  Moreover, the general contractor’s having such an employee on site is not evidence that the subcontractor and its employee were not free to do their work in their own way and is not evidence that the general contractor controlled the method of work or its operative details.  
See id.  
       

Pierce also argues that Charter’s purchasing of the lights and deciding on the location of the lights is further evidence of Charter’s actual control over TDI’s work.  However, Pierce does not cite us to any authority, nor have we found any that indicates that a general contractor’s on-site personnel, regular progress meetings, purchase of supplies, or decision of where to place lights rises to the level of actual control.  

After reviewing the entire record in the light most favorable to Pierce, indulging every reasonable inference and resolving any doubts against the motion, we hold that Pierce failed to produce a scintilla of probative evidence that raises a genuine issue of material fact as to Charter’s exercise of actual control over TDI’s work.  
See Moore
, 981 S.W.2d at 269.  

Accordingly, we overrule Pierce’s second issue.
(footnote: 3)    

IV. Conclusion 

We affirm the trial court’s judgment.  

BOB MCCOY

JUSTICE

PANEL B: DAUPHINOT, HOLMAN, and MCCOY, JJ.

DELIVERED: April 12, 2007

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
We note that cases considering the duties of premises owners and general contractors are used interchangeably.  
Clayton W. Williams Jr., Inc. v. Olivo
, 952 S.W.2d 523, 527–28 (Tex. 1997).  Similarly, a general contractor owes the same duty as a premises owner to an independent contractor’s employee.  
Koch Ref. Co. v. Chapa
, 11 S.W.3d 153, 155 n.1 (Tex. 1999).     

3:
In light of our disposition of Pierce’s second issue, we need not address his first issue which complains of the granting of Charter’s traditional motion for summary judgment.  
See
 
Ford Motor Co. v. Ridgway
, 135 S.W.3d 598, 600 (Tex. 2004).