# Supreme Court of Texas

---

No. 23-0996

---

Massage Heights Franchising, LLC,

*Petitioner*,

v.

Danette Hagman,

*Respondent*

---

On Petition for Review from the
Court of Appeals for the Fourteenth District of Texas

---

**PER CURIAM**

Respondent Danette Hagman was sexually assaulted by Mario Rubio, a massage therapist employed by MH Alden Bridge, LLC, a franchisee of petitioner Massage Heights Franchising, LLC ("Massage Heights"). Hagman sued Massage Heights, MH Alden Bridge, and other parties, alleging claims including negligence, negligent undertaking, and gross negligence. The jury found all defendants negligent, found a negligent undertaking by Massage Heights, attributed 15 percent responsibility to Massage Heights, and awarded Hagman both actual and exemplary damages. The court of appeals reversed the exemplary damages award but otherwise affirmed the trial court's judgment,

concluding there was legally sufficient evidence that Massage Heights was negligent in failing to provide a list of disqualifying offenses to its franchisees, allowing MH Alden Bridge to hire Rubio despite his criminal background.

We conclude that unlike the other defendants, Massage Heights did not owe Hagman a duty of care. The court of appeals therefore erred in affirming the judgment against Massage Heights based on the jury's negligence finding. We also hold that no evidence supports the jury's negligent undertaking finding. We therefore reverse the court of appeals' judgment in part and render judgment that Hagman take nothing from Massage Heights.

## BACKGROUND

Rubio obtained a massage therapy license in March 2017 after completing the required training and passing a state-mandated background check that required him to disclose any history of crimes that could render him ineligible for a license. At the time, Rubio had a criminal record: he pleaded "no contest" to delinquent conduct as a juvenile for theft in 2006 and 2007; he pleaded guilty to misdemeanors for trespass to a habitation, burglary of a vehicle, and evading arrest in 2008 and 2009; and he was charged with aggravated robbery in 2010, though that charge was later dismissed. Because the offenses were at least seven years old and Rubio had no sexual or felony offenses in his criminal history, however, the State issued him a license as permitted by statute.[1]

---

[1] *See* TEX. OCC. CODE §§ 53.021-.023.

2

Several months later, MH Alden Bridge hired Rubio as a massage therapist. The background check it performed revealed the above record but no crimes or criminal allegations of a sexual nature.

MH Alden Bridge offered massage services to the public under the "Massage Heights" branding pursuant to a Franchise Agreement it executed with Massage Heights, as well as an Operations Manual incorporated into the Agreement by reference. The Franchise Agreement provided that MH Alden Bridge was an independent contractor with sole responsibility for all employment decisions, subject to two conditions: all massage therapists had to (1) be licensed by the State, without any suspensions or licensing offenses reported, and (2) undergo an oral interview, a practical interview, and a background check by MH Alden Bridge's selected third-party provider. The Agreement also provided that MH Alden Bridge was solely responsible for customer safety and security on its premises as well as compliance with Texas laws regarding hiring, training, and supervising therapists. Conversely, the Agreement obligated Massage Heights to provide guidance and advice about certain "standards, specifications, processes, procedures, requirements or instructions," particularly through the Operations Manual.

While operating under the Franchise Agreement, MH Alden Bridge hired Rubio in May 2017 after verifying Rubio's license, conducting its own background check, and performing a practical interview of Rubio. Hagman had been a regular customer at the franchise since 2014. On the day of the assault in September 2017, she had specifically requested Rubio as a massage therapist, unaware that

3

another client had previously complained to MH Alden Bridge that Rubio sexually assaulted her during a massage in July 2017. That customer never reported the incident to the police, but Rubio's employment file contained a report of the previous assault. After Rubio assaulted Hagman, she reported the incident to the manager of MH Alden Bridge. Rubio was later charged and fled the country but was ultimately apprehended and convicted upon his return.

Hagman sued MH Alden Bridge, Massage Heights, Rubio, OMG Holdings (owner of MH Alden Bridge), and Eric Oliver (president of OMG Holdings), alleging claims of assault, negligence, negligent undertaking, premises liability, vicarious liability, and gross negligence. The jury found all defendants negligent and found a negligent undertaking by Massage Heights, attributed 15 percent responsibility to Massage Heights, and awarded Hagman $1.5 million in damages and $1.8 million in exemplary damages. The jury also answered "no" when asked whether MH Alden Bridge was subject to the control of Massage Heights.

The court of appeals overturned the exemplary damages award based on Section 41.005 of the Civil Practice and Remedies Code, which prohibits such damages for the criminal acts of another. 679 S.W.3d 298, 301-02 (Tex. App.—Houston [14th Dist.] 2023). But the court affirmed the remainder of the trial court's judgment, holding that Massage Heights owed a duty of reasonable care to customers at franchise locations as a matter of law due to its control over the franchisee's operations. *Id.* at 305. The court also held that Massage Heights' failure to provide a list of disqualifying offenses to its

4

franchisees, allowing the hiring of therapists with criminal backgrounds similar to Rubio's, supported the jury's finding of a breach of duty that caused Hagman's damages. *Id.* at 306. This petition followed.

## ANALYSIS

### I. Massage Heights did not control Rubio's hiring and thus owed no duty.

A threshold legal requirement for negligence liability is that the defendant owes the plaintiff a duty. *Kroger Co. v. Elwood*, 197 S.W.3d 793, 794 (Tex. 2006). Here, the Franchise Agreement refers to MH Alden Bridge as an "independent contractor" of Massage Heights. We have addressed in various contexts whether a defendant—such as a general contractor or premises owner—has sufficient control over a purported independent contractor to give rise to a duty of reasonable care. These decisions help frame our duty inquiry here. *See HNMC, Inc. v. Chan*, 683 S.W.3d 373, 381 (Tex. 2024) (explaining that new duty analysis is unnecessary "where there is a duty rule that takes the factual circumstances at issue into account").

A general contractor typically does not have a duty to ensure that an independent contractor safely performs his work. *Koch Refin. Co. v. Chapa*, 11 S.W.3d 153, 155 (Tex. 1999). But when the general contractor has sufficient control over the subcontractor's work, the general contractor may be held liable for injuries resulting from its failure to exercise reasonable care in supervising the subcontractor's activities. *Redinger v. Living, Inc.*, 689 S.W.2d 415, 418 (Tex. 1985).

The court of appeals held that Massage Heights owed a duty to MH Alden Bridge's customers as a matter of law because it "controlled,"

5

through the Operations Manual, "the minutia of its franchise locations and of the work performed by the masseuses." 679 S.W.3d at 305. This holding is flawed because it focuses on a "general right of control over operations," not on whether Massage Heights "had specific control over" the "alleged . . . defects that led to [the plaintiff's] injury": here, Rubio's hiring. *Exxon Corp. v. Tidwell*, 867 S.W.2d 19, 23 (Tex. 1993).[2] "[I]t is not enough to show that the defendant controlled one aspect of [the] activities [in question] if [the plaintiff's] injury arose from another." *Gen. Elec. Co. v. Moritz,* 257 S.W.3d 211, 214 (Tex. 2008). Instead, the control "must relate to the activity that actually caused the injury." *Coastal Marine Servs. of Tex., Inc. v. Lawrence*, 988 S.W.2d 223, 226 (Tex. 1999).

With this focus in mind, we consider whether Massage Heights had control over the injury-causing conduct. Control may be demonstrated either by an explicit contractual provision or by evidence of actual exercise of control. *Dow Chem. Co. v. Bright*, 89 S.W.3d 602, 606 (Tex. 2002). We examine each in turn.

### A.   Contractual right of control

One party may owe a duty of care regarding another party's work if it has a contractual right to control the means, methods, or details of that work. *Elliott-Williams Co. v. Diaz*, 9 S.W.3d 801, 804 (Tex. 1999). Whether a contract gives a right of control is generally a question of law. *See Bright*, 89 S.W.3d at 606. Merely retaining or exercising a general

---

[2] The court of appeals' analysis of the breach and proximate-causation elements of Hagman's negligence claim against Massage Heights focused on Rubio's hiring. 679 S.W.3d at 306-07.

6

right to recommend a safe manner to perform their work is insufficient to impose a duty. *Koch*, 11 S.W.3d at 155 (citing RESTATEMENT (SECOND) OF TORTS § 414 cmt. c. (AM. L. INST. 1965)).

In this case, the Franchise Agreement expressly designated MH Alden Bridge as an "independent contractor" and the "sole operator" of its massage business. The Agreement made MH Alden Bridge "solely responsible for all employment decisions," including hiring, firing, training, supervising, disciplining, record keeping, and personnel policies. It specified that this responsibility remained with MH Alden Bridge even if it received advice from Massage Heights on these matters. The Franchise Agreement, along with the Operations Manual, also specifically assigned to MH Alden Bridge the responsibility for customer safety.

The Agreement contemplated that Massage Heights would provide "guidance" and "advice" regarding certain "standards, specifications, processes, procedures, requirements, or instructions," which were set forth in the Operations Manual and other regularly updated written materials. The Manual and Agreement delineated processes for training massage therapists, their interactions with clients, and the manner in which services were to be performed. Furthermore, the Agreement imposed upon franchisees the obligation to adhere to Massage Heights' requirements regarding product sales, service offerings, advertising, operational techniques, and marketing strategies.

The Franchise Agreement, by its terms, assigned control over hiring—the very activity that led to Hagman's injuries—to MH Alden

7

Bridge rather than Massage Heights. Massage Heights did not have a contractual right to control the hiring process, as the Agreement explicitly designated the franchisee as the independent contractor responsible for all employment decisions, including hiring, firing, training, and supervision of employees. Although Massage Heights had the right to offer guidance and advice concerning operational standards, that is insufficient to support a duty. *See id.* The franchisee retained full responsibility for these matters, notwithstanding any advice or recommendations provided by the franchisor. Accordingly, we conclude Massage Heights did not have a contractual right to control MH Alden Bridge's hiring of Rubio.

## B. Actual exercise of control

A defendant who actually exercises control over a contractor's work also owes a duty of care regarding the safe performance of the work controlled. *Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 783 (Tex. 2001). As discussed above, the control exercised must relate directly to the injury caused by the negligence. *Elliott-Williams*, 9 S.W.3d at 804. Merely exercising or retaining a general right to recommend a safe manner for the independent contractor's employees to perform their work is insufficient to impose a duty. *Koch*, 11 S.W.3d at 155. Evidence of past safety instructions does not, on its own, establish the requisite degree of control necessary to create a duty so long as the promulgation of safety requirements and procedures did not unreasonably increase the likelihood or severity of injury. *Id.* at 156. When there are disputed facts regarding the actual exercise of control, that question should be resolved by a jury. *Lee Lewis Constr.*, 70 S.W.3d at 783.

8

Here, the jury failed to find that MH Alden Bridge was subject to Massage Heights' control, and Hagman has not proven as a matter of law that Massage Heights actually controlled Rubio's hiring or that its safety instructions unreasonably increased Hagman's risk of injury. In *Koch* and *Bright*, we held that merely showing a party was present to tell its independent contractor's employees they were "doing 'something wrong'" and to remind them to perform the job safely is insufficient to establish control. *Bright*, 89 S.W.3d at 608 (quoting *Koch*, 11 S.W.3d at 155). Such actions do not demonstrate that the independent contractor was not free to perform its work in its own manner.

Here, Massage Heights did provide certain safety guidelines, such as requiring franchisees to conduct background checks on potential massage therapists, controlling the draping method they used, specifying how they should be trained, and detailing how they should interact with clients. Additionally, Massage Heights implemented protocols designed to improve and coordinate franchisees' reporting and responses to sexual assault allegations. But there is no evidence that these guidelines unreasonably increased the risk of assaults.

The court of appeals reasoned that Massage Heights directed the order of work and controlled the means, methods, and details of MH Alden Bridge's operations by providing guidance and training materials to franchisees and by dictating the order in which the franchisee's therapists were to perform their work and carry out appointments with customers. 679 S.W.3d at 305. None of this amounted to "actual control" over hiring decisions—the alleged negligent action connected to Hagman's injuries in this case.

9

The court of appeals also relied on our decision in *Read v. Scott Fetzer Co.*, 990 S.W.2d 732 (Tex. 1998), for the proposition that certain franchisors may have a duty to investigate a prospective employee when that employee has special access to a vulnerable group. In *Read*, a vacuum manufacturer sold exclusively to independent distributors, who were required to recruit salespeople to sell vacuums door-to-door through in-home demonstrations. *Id.* at 733-34. A customer was sexually assaulted by one of these door-to-door salesmen and sought to sue the manufacturer. *Id.* at 734. We held that the vacuum manufacturer was directly liable despite using an independent contractor because the manufacturer retained control over the details of the sales process in homes and thus had a duty to exercise that control reasonably. *Id.* at 736.

Unlike in *Read*, as explained above, Massage Heights did not have either the right of control or actual control over the hiring of employees. In *Read*, the manufacturer "retained control by requiring in-home sales." *Id.* Imposing a duty on massage franchising companies based on the notion that they retain control over their franchisees simply by requiring them to hire licensed massage therapists to perform massages on customers would be inconsistent with our precedents requiring proof of control over the specific injury-causing conduct. *Read* thus provides no basis for holding Massage Heights liable for Hagman's injuries.

## II. Massage Heights had no duty to refrain from entering into a franchise agreement with MH Alden Bridge.

Hagman presents an alternative argument, which the court of appeals did not reach, that Massage Heights owed her a duty either to refrain from entering into or to terminate franchise agreements with Eric Oliver's franchise locations, including MH Alden Bridge. Hagman points to evidence presented at trial indicating that Massage Heights had received prior reports of sexual misconduct at franchise locations, that executives were aware of the risk of sexual assault, and that Massage Heights had received reports of twelve assaults at Oliver's franchise locations specifically.

This argument appears to be akin to a negligent hiring or retention claim. This Court has not ruled definitively on the existence, elements, or scope of such a claim. *See Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 804 n.27 (Tex. 2010). Nor must we do so here because no such claim was presented to the jury. Instead, the jury was instructed not to consider MH Alden Bridge's decisions regarding hiring, firing, or training as evidence of Massage Heights' negligence.

Hagman also argues for the recognition of a new duty under the factors we identified in *Greater Houston Transportation Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990). But as noted above, there is already a duty rule that contemplates this case's factual situation, so a *Phillips* analysis would be improper. *Chan*, 683 S.W.3d at 381. And as we have explained, the existing rule requires that "the control must relate to the injury the negligence causes." *Bright*, 89 S.W.3d at 607. Nothing suggests that Massage Heights was obligated to use any contractual mechanisms to negate or circumvent its franchisees' contractual right to

11

make employment decisions unilaterally. Aside from Rubio's own criminal intent, the only plausible proximate cause of the assault was MH Alden Bridge's decision to hire Rubio, which Massage Heights did not control. Hagman's alternative theory improperly hinges on a form of control that is not causally connected to the injury.

For these reasons, we conclude as a matter of law that the jury's negligence finding cannot support a judgment against Massage Heights.

## III. There is legally insufficient evidence to support a finding of negligent undertaking.

Hagman also obtained a jury finding that Massage Heights is liable for her injuries under a theory of negligent undertaking. Although the court of appeals did not reach Massage Heights' legal sufficiency challenge to this finding, we do so in the interest of judicial economy. *Baty v. Futrell*, 543 S.W.3d 689, 697 (Tex. 2018).

A negligent undertaking occurs when a defendant undertakes, gratuitously or for consideration, to render services that it knows or should know are necessary for another's protection and either (1) the failure to exercise reasonable care increases the risk of physical harm or (2) harm results because of the other's reliance on the undertaking. *Elephant Ins. Co. v. Kenyon*, 644 S.W.3d 137, 151 (Tex. 2022). Hagman argues that Massage Heights undertook a duty to protect her by way of the Franchise Agreement with MH Alden Bridge, which included training and operational standards meant to prevent harm to customers. Hagman contends that Massage Heights violated this duty by failing to train or "investigate the operations" of MH Alden Bridge's owners Oliver and OMG Holdings, not informing her that there were

12

other allegations of sexual misconduct at Massage Heights franchise locations, and allowing Rubio to be hired.

In *Chan*, we held that a person who does not control the premises at issue may owe a duty of due care by undertaking to make premises safe for others, but asking others to reduce or eliminate dangers does not constitute an undertaking. *See* 683 S.W.3d at 382-83. As Massage Heights explains, all safety responsibilities were contractually assigned to MH Alden Bridge, so Massage Heights did not undertake to keep Hagman safe.

Hagman also points to testimony at trial that Massage Heights sought to train its franchisees to prevent sexual assault. But there is no evidence to suggest that any failure to train was a proximate cause of Hagman's assault. Instead, Hagman appears to take the position that if MH Alden Bridge's principals had been properly trained, Rubio would not have been hired at all. As already explained, however, Massage Heights did not control MH Alden Bridge's hiring and thus owed Hagman no duty in that regard. Therefore, we conclude that there is legally insufficient evidence to support the jury's finding that Massage Heights negligently performed an undertaking in a manner that proximately caused Hagman's injury.

## Conclusion

We hold the court of appeals erred in concluding that Massage Heights owed a duty of care to Hagman with regard to Rubio's hiring. The record demonstrates that Massage Heights had neither a right of control nor actual control over MH Alden Bridge's hiring decisions sufficient to expose Massage Heights to liability for not providing a list

of disqualifying offenses to franchisees.  Nor did Massage Heights owe a duty of care to Hagman regarding whether it should enter into or maintain a franchise agreement with MH Alden Bridge.  These holdings establish as a matter of law that Hagman cannot prevail on her negligence claim, and there is legally insufficient evidence of negligent undertaking to support the jury's finding on that claim.  Accordingly, without hearing oral argument, we grant the petition for review, reverse the court of appeals' judgment in part, and render judgment that Hagman take nothing on her claims against Massage Heights.[3]  *See* TEX. R. APP. P. 59.1, 60.2(c).

**OPINION DELIVERED:** May 2, 2025

---

[3] Hagman has not argued that any other alterations in the judgment should be made if we hold Massage Heights owed her no legal duty.