# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-22-00085-CV

---

**Housing Authority of the City of Austin, Appellant**

**v.**

**Julia Garza, Appellee**

---

**FROM THE 250TH DISTRICT COURT OF TRAVIS COUNTY
NO. D-1-GN-18-005431, THE HONORABLE KARIN CRUMP, JUDGE PRESIDING**

---

### M E M O R A N D U M   O P I N I O N

Appellee Julia Garza sued the Housing Authority of the City of Austin under the Texas Tort Claims Act (TTCA), seeking damages related to injuries from a fall that she asserts was caused by a premises defect created during a construction project at her residence. *See generally* Tex. Civ. Prac. & Rem. Code §§ 101.001-.109 (TTCA). The Housing Authority filed a plea to the jurisdiction, arguing that its governmental immunity has not been waived under the TTCA because Garza cannot establish that the allegedly dangerous condition constitutes a premises defect for which the Housing Authority would be liable to Garza if the Housing Authority were a private person. The trial court denied the Housing Authority's plea to the jurisdiction, and the Housing Authority filed this interlocutory appeal.

The issue in this case is whether the Housing Authority owed Garza a duty to exercise reasonable care to protect her from dangerous conditions that were either known or

reasonably discoverable. Because we conclude that Garza did not raise a fact issue about whether the Housing Authority exercised sufficient control over the contractor's work on the premises to give rise to a duty of care, we reverse the trial court's order and render judgment dismissing the case against the Housing Authority.

## BACKGROUND[1]

On September 5, 2017, Garza fell when she was outside near the back porch of her apartment unit located in the Pathways at Georgian Manor apartment complex (the "Property"). The Housing Authority owns and manages the Property. The Housing Authority operates under the U.S. Department of Housing and Urban Development (HUD) to implement, administer, and oversee housing assistance programs to people who qualify for rental assistance under the HUD guidelines.

In 2017, the Housing Authority began an extensive nine-month renovation project at multiple complexes it owned, including the Property (the "Project"). As part of the Project, several units at the Property, including Garza's unit, were renovated to comply with the Americans with Disabilities Act (ADA). The Housing Authority entered into the "Prime Contract" with Austin Affordable Housing Corporation (AAHC), which is an affiliate of the Housing Authority and is also the project developer and prime contractor, to provide all construction services and materials on the properties for the Project. As allowed by the Prime Contract, AAHC entered into

---

[1] Garza did not file an appellee's brief or otherwise contradict the factual statements in the Housing Authority's brief. Therefore, we accept as true the facts stated by the Housing Authority. *See* Tex. R. App. P. 38.1(g) ("In a civil case, the court will accept as true the facts stated [in appellant's brief] unless another party contradicts them."); *see also In re J.D.R.*, 649 S.W.3d 449, 454 (Tex. App.—Houston [1st Dist.] 2022), *disapproved on other grounds sub nom. Ex parte K.T.*, 645 S.W.3d 198 (Tex. 2022).

a "Subcontract" with S. Cook Construction Company, L.P. to provide all construction services and materials on the Project. Cook Construction in turn subcontracted with Specialty Tractor Landscaping, L.L.C. to provide landscaping and construction of porches for several units at the Property. Under the contracts, Specialty Tractor was responsible for providing "a sufficient number of properly qualified workmen, a sufficient amount of materials, adequate tools, appliances, equipment, and supplies of proper quality to prosecute said work efficiently, promptly and in accordance with [Cook Construction's] schedule for the Work." The contracts also required Specialty Tractor to directly supervise its work and to conform to the safety policies and programs of Cook Construction and AAHC and all safety laws, regulations, ordinances, and requirements promulgated by any governmental authority with jurisdiction over the Project. In addition, the contracts established that Specialty Tractor's work was to be performed under the direction of Cook Construction, but that notwithstanding Specialty Tractor's agreement to abide by Cook Construction's direction, "it is agreed and understood that [Specialty Tractor] is an independent contractor, and [Specialty Tractor] shall be responsible for all means, methods and techniques for performance of the Work."

Before the Project began, the Housing Authority hosted multiple community meetings at the Property to inform residents of the construction process. The Housing Authority continued to hold community meetings throughout the duration of the Project to keep residents informed on the status of the construction and any new developments and to answer residents' questions. Translators also attended the community meetings to assist residents who did not speak English. In addition to the community meetings, Property residents received several written notices throughout the construction process advising of construction concerning the resident's specific unit and the Property in general.

3

Garza's unit was one of several units at the Property undergoing renovations to comply with ADA standards. Garza acknowledged receiving several notification letters from Housing Authority personnel advising of upcoming construction on her unit and the apartment complex in general. At least forty-eight hours before construction began, the Housing Authority sent Garza written notice that contractors would be performing work on her back porch and that Garza needed to remove all items from her back porch and porch storage closet. The written notice also advised her that the construction would be completed by September 8, 2017. In addition, a construction worker orally notified Garza of the upcoming construction and instructed her to remove her items from her back porch and storage closet. Garza removed her belongings from her back porch and storage closet as instructed.

Specialty Tractor began construction on Garza's back porch on September 5, 2017. Garza testified as follows about the events of that day. She could hear the ongoing construction from within her unit, and she observed the construction while traveling to and from the parking lot. After leaving for the day to visit friends, Garza returned to her residence after Specialty Tractor had finished working for the day. While she was in the parking lot, she could see her back porch and noticed that a plastic tarp that she had used to cover the belongings she had removed from her storage closet had blown off. Garza went into her apartment "through the front door because there was no construction on the front door," then went back outside through her front door because she wanted to put the plastic cover back over her belongings. It was still light outside. She had no problems with her vision, and she was able to see everything as she was walking to her back porch. She walked around the side of her unit towards her back porch, and as she approached her porch, she observed "some loose dirt" along the side of the concrete pad that had been poured. She knew the concrete pad had not yet dried because the wooden stakes used to pour the concrete pad were

4

still in place. She nevertheless proceeded towards her back porch to cover up her belongings and "stepped on some of that loose dirt" that was unstable, which caused her to fall.

Garza subsequently filed suit against the Housing Authority, Cook Construction, and Specialty Tractor. In her live petition (her Fourth Amended Original Petition), Garza asserts a premises-liability claim against the Housing Authority under the TTCA and alleges that the statute waives sovereign immunity for personal-injury claims caused by a special defect or premises defect if the Housing Authority would be liable under Texas law if it were a private person. *See* Tex. Civ. Prac. & Rem. Code §§ 101.021(2), .022(a). She also asserts that after her fall, "[i]t was determined that construction/landscaping crews had placed thin, wooden planks over the construction/landscaping trenches and covered them with dirt making them invisible to [Garza];" "[s]upportive materials or structures underneath the wooden planks were nonexistent;" and "[t]here were no warning signs or barriers that prevented [Garza] from entering her backyard prior to her fall."

The Housing Authority filed a plea to the jurisdiction, asserting that Garza could not establish a waiver of its governmental immunity under the TTCA. The Housing Authority argued that the alleged defect was not a special defect as defined by Texas law. To address Garza's premises-defect claim, the Housing Authority attached evidence to show that (1) it was not in possession of the part of the construction site where the injury occurred, (2) it did not have actual or constructive knowledge of the allegedly dangerous condition, and (3) the condition on the premises did not pose an unreasonable risk of harm. Garza filed a response to which she attached evidence in support of her claim. The Housing Authority filed a reply, and Garza filed a response to the reply. The trial court conducted a hearing on the plea to the jurisdiction on January 31, 2022.

5

On February 2, 2022, the trial court signed its order denying the plea to the jurisdiction. This interlocutory appeal followed.

## ANALYSIS

On appeal, the Housing Authority challenges the trial court's denial of its plea to the jurisdiction in two issues. In its first issue, it asserts that it is a governmental entity entitled to immunity under the TTCA unless immunity has been waived. In its second issue, it contends that its sovereign immunity has not been waived, based on the facts of this case, arguing that Garza did not present sufficient evidence to raise a fact issue on any of the three elements of her premises-defect claim. We turn first to the issue of whether the Housing Authority is a governmental entity entitled to sovereign immunity under the TTCA.

### I.      Sovereign Immunity

"Sovereign immunity protects the State from lawsuits for money damages." *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006) (quoting *Texas Nat. Res. Conservation Comm'n v. IT–Davy,* 74 S.W.3d 849, 853 (Tex. 2002)). Political subdivisions of the State are entitled to such immunity—referred to as governmental immunity—unless it has been waived.[2] *See Wichita Falls State Hosp. v. Taylor,* 106 S.W.3d 692, 694 n.3 (Tex. 2003) (explaining difference between sovereign immunity and governmental immunity). Sovereign immunity from suit defeats a court's subject-matter jurisdiction. *See Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003) (citing *Texas Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999)).

---

[2] We will use the term "sovereign immunity" to refer to both sovereign immunity and governmental immunity.

In a suit against a governmental unit, the plaintiff must affirmatively demonstrate the court's jurisdiction by alleging a valid waiver of immunity. *Id.* The TTCA includes, among other things, a limited waiver of sovereign immunity from suits alleging personal injury caused by a condition of real property if the governmental unit would be liable to the plaintiff if the governmental unit were a private person. *See* Tex. Civ. Prac. & Rem. Code §§ 101.021(2), .022. The TTCA recognizes two categories of such claims: special defects and premises defects. *Id.* § 101.022.

The Housing Authority asserts that as a municipal corporation, it is entitled to sovereign immunity unless that immunity is waived under the TTCA. *See* Tex. Loc. Gov't Code § 392.006 (establishing housing authority is unit of government for all purposes, including application of TTCA); *see also Housing Auth. of City of Austin v. Elbendary*, 581 S.W.3d 488, 493 (Tex. App.—Austin 2019, no pet.) (considering whether Housing Authority's immunity as local governmental entity had been waived in breach-of-contract suit). We note that Garza did not contend in the trial court that the Housing Authority was not entitled to sovereign immunity in general. Instead, she responded to the Housing Authority's plea by presenting evidence of jurisdictional facts and asserting that she at least had raised a material fact issue on the elements of her premises-defect claim against the Housing Authority, meaning that its immunity was waived under the TTCA. We agree with the Housing Authority's contention under its first issue that it is a governmental entity entitled to sovereign immunity under the TTCA.

## II.    Standard of Review

We review de novo the trial court's ruling on the Housing Authority's plea to the jurisdiction. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). To

determine whether Garza met her burden to demonstrate a valid waiver of immunity, we consider the facts she alleges, and to the extent it is relevant to the jurisdictional issue, we consider the evidence submitted by the parties. *Dallas Area Rapid Transit*, 104 S.W.3d at 542. In this case, because the Housing Authority's plea challenges the existence of jurisdictional facts (as opposed to only the pleadings) and because those jurisdictional facts implicate the merits of Garza's case, the Housing Authority must overcome a burden similar to a movant's burden on a traditional summary-judgment motion and conclusively negate those facts, which we would otherwise presume to be true. *See Miranda*, 133 S.W.3d at 227-28; *Bacon v. Texas Historical Comm'n*, 411 S.W.3d 161, 171 (Tex. App.—Austin 2013, no pet.). If the evidence creates a fact question on the jurisdictional issue, the factfinder must resolve the jurisdictional issue, but if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Miranda*, 133 S.W.3d at 227-28. "Our ultimate inquiry is whether the plaintiff's pleaded and unnegated facts, taken as true and liberally construed with an eye to the pleader's intent, would affirmatively demonstrate a claim or claims within the trial court's subject-matter jurisdiction." *Brantley v. Texas Youth Comm'n*, 365 S.W.3d 89, 94 (Tex. App.—Austin 2011, no pet.).

## III.   Premises-Defect Claim

In its second issue, the Housing Authority asserts that the trial court erred by denying its plea to the jurisdiction because Garza did not raise a material fact issue on the various elements of her premises-defect claim, and thus it would not be liable to her on that claim if it were

a private person.[3]  The threshold question in a premises-liability case is whether the owner owed a duty to the injured person, which is a question of law.  *Hillis v. McCall*, 602 S.W.3d 436, 440 (Tex. 2020) (explaining that "'[t]he existence of a duty is a question of law for the court to decide from the facts surrounding the occurrence' at issue" (quoting *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996))).  The duties owed by the property owner in a premises-liability case "depend upon the role of the person injured on his premises." *Rosas v. Buddies Food Store*, 518 S.W.2d 534, 535 (Tex. 1975).  The parties do not dispute that as a tenant at the Housing Authority's property, Garza qualifies as an invitee, which is defined as "one who enters on another's land with the owner's knowledge and for the mutual benefit of both." *Id.* at 536.

When, like Garza, the injured person qualifies as an invitee, as a general rule, the property owner owes a "duty to make safe or warn against any concealed, unreasonably dangerous conditions of which the landowner is, or reasonably should be, aware but the invitee is not." *Austin v. Kroger Tex., L.P.*, 465 S.W.3d 193, 203 (Tex. 2015).  When the condition is open and obvious or known to the invitee, "the condition will, in most cases, no longer pose an unreasonable risk

---

[3]  We note that although Garza asserted both "injury by special defect" and "injury by premises defect" in her petition, in her response to the Housing Authority's plea to the jurisdiction, she states, "The [Housing Authority] inaccurately characterizes [Garza's] claim as a special defect claim."  Thus, she appears to have abandoned the special-defect claim.  Because Garza did not continue to assert her special-defect claim in her trial-court response, we address only whether she established a waiver of immunity on her premises-defect claim.  But we note that while the TTCA does not expressly define "special defect," the Texas Supreme Court has explained that they are "a subset of premises defects likened to excavations or obstructions on roadways." *Christ v. Texas Dep't of Transp.*, 664 S.W.3d 82, 86 (Tex. 2023).  For special defects, "the government owes a duty to warn that is the same as a private landowner owes an invitee," which is the same standard that we apply to her premises-defect claim. *Id.* at 86-87.  The parties do not dispute that the condition alleged by Garza is a premises defect, and we agree that she has sufficiently alleged such a defect. *See Texas Dep't of Transp. v. Ramirez*, 74 S.W.3d 864, 866 (Tex. 2002) ("Whether a condition is a premise defect is a legal question.").

because the law presumes that invitees will take reasonable measures to protect themselves against known risks, which may include a decision not to accept the invitation to enter onto the landowner's premises." *Id.* The essential elements of a premises-liability claim are as follows:

> (1) that [the defendant] had actual or constructive knowledge of some condition on the premises; (2) that the condition posed an unreasonable risk of harm to [the plaintiff]; (3) that [the defendant] did not exercise reasonable care to reduce or to eliminate the risk; and (4) that [the defendant's] failure to use such care proximately caused [the plaintiff's] personal injuries.

*United Scaffolding, Inc. v. Levine*, 537 S.W.3d 463, 471 (Tex. 2017) (quoting *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 296 (Tex. 1983)). In addition, "to prevail on a premises liability claim a plaintiff must prove that the defendant possessed—that is, owned, occupied, or controlled—the premises where injury occurred." *Wilson v. Texas Parks & Wildlife Dep't*, 8 S.W.3d 634, 635 (Tex. 1999) (per curiam). "[A] party who does not own, occupy, or control premises may nevertheless owe a duty of due care if it undertakes to make the premises safe for others." *Id.*

### A. Premises Defects on Property Where Independent Subcontractor Is Working

The Texas Supreme Court has divided premises defects arising on property where an independent contractor is working into two subcategories: (1) defects existing when the independent contractor enters and (2) defects created by the independent contractor's work. *Shell Oil Co. v. Khan,* 138 S.W.3d 288, 295 (Tex. 2004); *Coastal Marine Serv., Inc. v. Lawrence,* 988 S.W.2d 223, 225 (Tex. 1999). Under the first subcategory, a premises owner has a duty to inspect the premises and warn of concealed hazards that the owner knows or should have known exist. *Coastal Marine*, 988 S.W.2d at 225. "Only concealed hazards—dangerous in their own

10

right and independent of action by another—that are in existence when the independent contractor enters the premises fall into this first subcategory of premises defects." *Id.* Under the second subcategory—when the dangerous condition arises because of the independent contractor's work activity—the premises owner has no duty with regard to those defects created by the independent contractor, unless he retains a right to control the work that created the defect. *Id.* at 225-26. The standard is narrow for determining whether an owner has retained this right to control:

> The right to control must be more than a general right to order work to stop and start, or to inspect progress. The supervisory control must relate to the activity that actually caused the injury, and grant the owner at least the power to direct the order in which work is to be done or the power to forbid it being done in an unsafe manner.

*Id.* at 226. The owner must have the right to control the means, methods, or details of the independent contractor's work to such an extent that the independent contractor cannot perform the work in its own way. *See Dow Chem. Co. v. Bright*, 89 S.W.3d 602, 606 (Tex. 2002); *Koch Ref. Co. v. Chapa*, 11 S.W.3d 153, 155 (Tex. 1999) (per curiam).

A plaintiff can establish the requisite control in two ways: by evidence of a contractual agreement that explicitly assigns the premises owner a right to control, or absent such an agreement, by evidence that the premises owner actually exercised control over the means, methods, or details of the independent contractor's work. *JLB Builders, L.L.C. v. Hernandez*, 622 S.W.3d 860, 865 (Tex. 2021). We consider whether Garza has raised a fact issue concerning the Housing Authority's contractual ability to exercise control over the specific work that created the alleged defect or its actual exercise of control over that specific work.

11

### 1. Contractual Control

In her petition, Garza alleged that the Housing Authority was "possessor of the area where [Garza] fell at the time of her injury as they owned, occupied, or controlled the premises." Although she alleged that Cook Construction "had a contractual right of control and exercised retained control over inspecting Specialty [Tractor's] work for contract compliance," she made no similar allegation about the Housing Authority. She alleged only that "[b]y [the Housing Authority's] duties to its Residents to provide a safe premises, it sought to secure performance under the relevant construction contracts that included warning and instructing the Residents and temporary barricading of dangerous conditions . . . ." In her response to the plea, she asserted only that the Housing Authority "had so much control [of the premises] that they had the ability to into [sic] agreements with contractors regarding the premises, manage the premises, and communicate with, and advise the tenants regarding the premises, and the pending construction/landscaping services made the basis of this lawsuit." She also asserted that the Housing Authority chose the contractor, was involved in the construction plan, and assumed responsibility for notifying the tenants, a task she alleges it inadequately performed.

Garza did not point to any provision in any of the contracts that provides the Housing Authority with a contractual right to control the means, methods, or details of the work to such an extent that Specialty Tractor could not perform the work in its own way. As we described earlier, our review of the contracts reveals that under their terms, Specialty Tractor was responsible for providing all workers, materials, and equipment necessary to do the work; it was required to directly supervise its own work and to conform to the other contractors' safety policies; and while it agreed to abide by the direction of Cook Construction, "it is agreed and understood that [Specialty Tractor] is an independent contractor, and *[Specialty Tractor] shall be responsible*

12

*for all means, methods and techniques for performance of the Work*." (Emphasis added.) We conclude that Garza has failed to raise a fact issue as to whether the Housing Authority had contractual control over the work that caused her injury. *See id.* at 869-79 (concluding that contract requiring independent contractor to supervise its own employees and to be "responsible for the manner and means of accomplishing the Work" did not confer right to general contractor to control work).

### 2. Actual Control

In her petition, Garza alleged that Cook Construction and Specialty Tractor exercised actual control over the premises where she fell, but she made no similar allegation about the Housing Authority. Similarly, in her response to the plea, she relied only on evidence that the Housing Authority managed the premises generally, but she pointed to no evidence that it actually exercised control over the work done by Specialty Tractor that caused her injury. We conclude that Garza failed to raise a fact issue as to the Housing Authority's actual control of the injury-causing work. *See id.* at 865-69 (concluding that plaintiff failed to raise fact issue on actual control when general contractor had safety inspectors on site and controlled the overall timing and sequence of work being performed by various independent subcontractors because no evidence indicated general contractor exercised any control over timing or sequence of independent contractor's employees' work).

We conclude that Garza failed to raise a fact issue related to whether the Housing Authority had contractual or actual control over the specific work that caused the defect that led to her injury. Accordingly, we hold as a matter of law that Garza also failed to raise a fact issue on the question of whether the Housing Authority owed her a duty of care such that it would be

liable to her if it were a private person. Therefore, we conclude that the Housing Authority's sovereign immunity under the TTCA has not been waived, and the trial court thus lacks subject-matter jurisdiction over Garza's suit against the Housing Authority. We sustain the Housing Authority's second issue.[4]

## CONCLUSION

Having concluded that the trial court erred by denying the Housing Authority's plea to the jurisdiction, we reverse and render judgment that Garza's suit against the Housing Authority is dismissed for lack of subject-matter jurisdiction.

_____

Gisela D. Triana, Justice

Before Justices Baker, Triana, and Theofanis

Reversed and Rendered

Filed: July 31, 2023

---

[4] Because Garza failed to raise a fact issue on the threshold element of the Housing Authority's duty, we need not reach the Housing Authority's arguments that it did not have actual or constructive knowledge of the allegedly dangerous condition at the time of the incident or that the open and obvious condition of "loose dirt" on a construction site did not pose an unreasonably dangerous risk of harm. *See* Tex. R. App. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal.").